Lin Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman (*admitted pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Paolo Meireles (*admitted pro hac vice*)
pmeireles@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

*Counsel for Plaintiffs and the Proposed FLSA
Collective and Classes*

*(Additional counsel on signature page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN JEROZAL and NIKKI GIN, individually and on behalf of all other members of the general public similarly situated, | Case No.: 2:22-CV-4094-GW-AFMx |
| Plaintiff, | **PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)** |
| v. | |
| STRYKER CORPORATION, a Michigan corporation, | Date: January 12, 2023 Time: 8:30 a.m. Ctrm.: 9D |
| Defendant. | Complaint Filed: June 14, 2022 |

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

I.    Stryker Corporation ...................................................................................... 3

II.   Plaintiffs Jonathan Jerozal and Nikki Gin ................................................... 3

III.  Stryker's Uniform Employment Policies and Practices ................................ 4

LEGAL STANDARDS ............................................................................................. 5

ARGUMENT ............................................................................................................. 6

I.    This Court Has Personal Jurisdiction Over Stryker. ..................................... 6

      A.    Stryker Was Plaintiffs' Employer. ...................................................... 7

            1.    The Joint Employer Doctrine Under the FLSA and
                  California Law. .......................................................................... 8

            2.    Stryker Was Plaintiffs' Joint Employer Under the FLSA
                  and California Law. ................................................................... 9

      B.    Stryker Had Sufficient Minimum Contacts With California to
            Establish Personal Jurisdiction. ........................................................ 11

            1.    Stryker Purposefully Directed Its Activities Toward
                  California. ................................................................................ 11

            2.    Plaintiffs' Claims Arose Out of Stryker's Contacts With
                  California. ................................................................................ 13

            3.    Exercising Jurisdiction Over Stryker Is Reasonable. ............. 14

II.   This Court Has Personal Jurisdiction Over the Claims of Out-of-State,
      Opt-In Plaintiffs........................................................................................... 16

III.  This Court Has Jurisdiction Over Gin's Claim Under New Jersey Law. ..... 20

      A.    Only a *Relationship* Between the Suit and Defendant's Forum
            State Contacts Is Required. ................................................................ 20

      B.    But For Stryker's Employment of Gin in California, Her Wage
            Claims Would Not Have Arisen. ........................................................ 22

      C.    Gin's Choice to Pursue Her Claims Under New Jersey Law
            Does Not Minimize Defendant's California Contacts......................... 24

CONCLUSION........................................................................................................ 25

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexis v. Rogers*,
No. 15CV691-CAB-BLM, 2016 WL 11707630 (S.D. Cal. Feb. 26, 2016) ........22

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*,
1 F.3d 848 (9th Cir.1993) .................................................15

*Arends v. Select Med. Corp.*,
No. CV 20-11381 TJH (AGRx), 2021 WL 4452275 (C.D. Cal. July 7, 2021) ...19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................6

*Belt v. P.F. Chang's China Bistro, Inc.*,
No. 18-3831, 2020 WL 3829026 (E.D. Pa. July 8, 2020) ...................20

*Bonnette v. Cal. Health & Welfare Agency*,
704 F.2d 1465 (9th Cir. 1983) .........................................8, 9

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ............................................5

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017).....................................16, 20, 21, 23

*Burchfield v. Prestige Consumer Healthcare, Inc.*,
534 F. Supp. 4 1192 (C.D. Cal. 2021) ...................................23

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).....................................................15

*Cabrera v. Bayer Healthcare, LLC*,
No. LA CV17-08525 JAK (JPRx), 2019 WL 1146828
(C.D. Cal. Mar. 6, 2019) ................................................23

*Calder v. Jones*,
465 U.S. 783 (1984).....................................................12

*Chavez v. Stellar Mgmt. Grp. VII, LLC*,
No. 19-CV-01353-JCS, 2020 WL 4505482 (N.D. Cal. Aug. 5, 2020) ...........19

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) .......................................12, 14

*Durward v. One Techs. LLC*,
No. CV 19-6371-GW-AGRX, 2019 WL 4930229 (C.D. Cal. Oct. 3, 2019)...6, 11

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021).................................................21

*Gaines v. Gen. Motors, LLC*,
No. 17CV1351-LAB (JLB), 2018 WL 3752336 (S.D. Cal. Aug. 7, 2018) .........23

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ..........................................22

*Goldberg v. Whitaker House Coop.*,
366 U.S. 28 (1961)........................................................8

# TABLE OF AUTHORITIES
### (continued)

Page

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .................................................................. 6

*Haralson v. United Airlines, Inc.*,
224 F. Supp. 3d 928 (N.D. Cal. 2016) .................................................. 11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .............................................................. 16

*Hibbs-Rines v. Seagate Techs., LLC*,
No. C 08–05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) .......... 8

*Holtegaard v. Howroyd-Wright Emp't Agency, Inc.*,
No. EDCV 20-509 JGB, 2020 WL 6051328 (C.D. Cal. Aug. 11, 2020) ............ 8

*Iannotti v. Wood Grp. Mustang*,
No. 20-cv-958-DWD, 2021 WL 2805812 (S.D. Ill. July 6, 2021) ...................... 20

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
No. 16-CV-06391-BLF, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ............ 23

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
No. LA ML19-02905 JAK (FFMx), 2022 WL 522484
(C.D. Cal. Feb. 9, 2022).......................................................................... 23

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ............................................................................... 17

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ............................................................................... 24

*Knecht v. C & W Facility Servs., Inc.*,
534 F. Supp. 3d 870 (S.D. Ohio 2021) .................................................. 20

*Kumarelas v. Kumarelas*,
16 F. Supp. 2d 1249 (D. Nev. 1998)...................................................... 24

*Laird v. Cap. Cities/ABC, Inc.*,
68 Cal. App. 4th 727 (1998) .................................................................... 8

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ................................................ 6, 7, 13, 14

*Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)............................................................................. 2

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
No. SACV 10-1172-AG (MLGx), 2011 WL 13153190
(C.D. Cal. May 12, 2011) ...................................................................... 16

*Pascal v. Concentra, Inc.*,
No. 19-CV-02559-JCS, 2019 WL 3934936 (N.D. Cal. Aug. 20, 2019) .............. 17

*Pavloff v. Cardinal Logistics Mgmt. Corp.*,
No. CV 20-00363 PA, 2020 WL 6828902 (C.D. Cal. Oct. 2, 2020) ............... 2, 19

*Pilgrim v. Gen. Motors Co.*,
408 F. Supp. 3d 1160 (C.D. Cal. 2019) ................................................ 23

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3 *Quimby-Johnson v. Bortree*,
4   No. SACV 19-662 JVS (DFMx), 2019 WL 4391131
    (C.D. Cal. June 26, 2019) .................................................................. 21

5 *Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................. 6

6 *Ray v. L.A. Cnty. Dep't of Pub. Soc. Servs.*,
7   52 F.4th 843 (9th Cir. 2022) ............................................................... 8

*Reitman v. Champion Petfoods USA, Inc.*,
8   No. CV 18-1736-DOC (JPRx), 2018 WL 4945645 (C.D. Cal. Oct. 10, 2018) ... 23

9 *Rex Real Est. Exch., Inc. v. Rex Real Est. I, L.P.*,
    No. CV 18-4161-GW(SSX), 2018 WL 8335386 (C.D. Cal. Sept. 20, 2018) ........ 6

10 *Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1947) ........................................................................... 9

11 *Seiffert v. Qwest Corp.*,
    No. CV-18-70-GF-BMM, 2018 WL 6590836 (D. Mont. Dec. 14, 2018) ..... 18, 19
12
*Senne v. Kansas City Royals Baseball Corp.*,
13   105 F. Supp. 3d 981 (N.D. Cal. 2015) ...................................... 12, 15, 21

14 *Sinatra v. Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ........................................................... 15

15 *Sloan v. Gen. Motors*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) .......................................... 16, 17
16
*Sprewell v. Golden State Warriors*,
17   266 F.3d 979 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th
    Cir. 2001) ......................................................................................... 6

18 *Swamy v. Title Source, Inc.*,
    No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) .............. 18

19 *Swartz v. KPMG LLP*,
20   476 F.3d 756 (9th Cir. 2007) ............................................................. 5

*Sylvia Landfield Tr. v. City of Los Angeles*,
21   729 F.3d 1189 (9th Cir. 2013) ........................................................... 6

22 *Trosper v. Stryker Corp., Howmedica Osteonics Corp., et al.*,
    No. 13-cv-0607, 2014 WL 1619052 (N.D. Cal. Apr. 22, 2014) ............................ 7

23 *Vernon v. State*,
    116 Cal. App. 4th 114 (2004) ............................................................. 8

24 *Warren v. MBI Energy Servs., Inc.*,
25   No. 1:19-cv-00800-RM-STV, 2020 WL 5640617 (D. Colo. Sept. 22, 2020) ..... 20

*Waters v. Day & Zimmermann NPS, Inc.*,
26   23 F. 4th 84 (1st Cir. 2022) .................................................. 17, 18, 19, 20

**Statutes**
27 29 U.S.C. 216(b) .................................................................................. 18

28

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Rules**

Fed. R. Civ. P. 20(a)(1)(A), (B)...................................................................................20

–v–

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

**INTRODUCTION**

Defendant Stryker Corporation ("Stryker"), a medical device company that sells its products nationwide, employed Plaintiffs Jonathan Jerozal ("Jerozal") and Nikki Gin ("Gin") as Sales Associates in California. Stryker required Plaintiffs and all other Sales Associates to complete a mandatory training period, often requiring 70 to 80 hours of work per week, for several weeks or months. As part of and during the extensive training, Stryker also required some of those Sales Associates, including Gin, to attend training in New Jersey.

Although Sales Associates were in mandatory training and as such entitled to the protections of the wage and hour laws, Stryker failed to pay overtime or provide meal or rest breaks to Sales Associates, and failed to reimburse them for reasonable and necessary business expenses. Plaintiffs filed this class, collective, and representative action to recover unpaid overtime wages and other reimbursement owed to them and others under the federal Fair Labor Standards Act ("FLSA") and the laws of California and New Jersey.

Stryker's three arguments in support of dismissal of part or all of Plaintiffs' First Amended Complaint ("FAC") fail. *First*, Stryker relies on a premature (and false) fact-based defense that this Court lacks personal jurisdiction, arguing that its subsidiaries, rather than Stryker, employed Plaintiffs. Defendant's Motion to Dismiss ("Mot.") at 2, ECF No. 54. Not so. Under well-established California law and the FLSA, Stryker and its subsidiaries, Stryker Employment and Howmedica Osteonics Corp., operated as a single, integrated enterprise such that Stryker is Plaintiffs' joint employer. While joint employment does not, of itself, establish personal jurisdiction, it rebuts Stryker's argument that it did not employ Plaintiffs because it was *Stryker* who dictated and controlled the employment policies and practices that gave rise to the California Plaintiffs' claims. To the extent Stryker argues that it was *not* a joint employer, that is a fact argument irrelevant to personal jurisdiction and unsuitable for adjudication on the pleadings. Regardless of who

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

signed Plaintiffs' paychecks, Stryker's Employee Handbook—which is expressly applicable to the California Plaintiffs—provides that *Stryker* "maintains standard definitions of employment, and [of] employees . . . as either exempt or non-exempt" that are "applicable to all employees of Stryker Corporation (the 'Company'), including all of its divisions and all of its subsidiaries and affiliates, in the United States." FAC ¶¶ 34, 38, ECF No. 52. These contacts satisfy Plaintiffs' *prima facie* showing that Stryker is subject to this Court's personal jurisdiction.

*Second*, Stryker argues that, under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), this Court may not exercise personal jurisdiction with respect to FLSA claims that arose outside of California. In so doing, Stryker asks this Court to depart radically from the reasoning and holdings of California District Courts (to say nothing of other courts as well). *See*, *e.g.*, *Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA, 2020 WL 6828902, at *4 n.2 (C.D. Cal. Oct. 2, 2020) ("The Court, following other federal courts in California, finds that '*Bristol-Myers* does not apply to FLSA claims brought in federal court.'" (citation omitted)). There is no reason that this court should deviate from the consensus of its peers, who have repeatedly declined to apply *Bristol-Myers* to FLSA collective actions brought in federal court because doing so would be contrary to the purpose of the FLSA and the interstate federalism concerns that animated the Supreme Court's decision do not apply to federal claims brought in federal court.

*Third*, Stryker's argument that this Court lacks personal jurisdiction over Gin's claim under New Jersey law fails because *but for* Gin's employment in California by Stryker, she would not have suffered harm during her mandatory training in New Jersey. The entire California-centered course of dealing between the parties (which is what courts examine when determining the connection between a legal claim and a defendant's contacts with the forum state) compels the conclusion that personal jurisdiction exists in these circumstances.

For these reasons, the Court should deny Stryker's motion.

## FACTUAL BACKGROUND

### I.     Stryker Corporation

Stryker is a medical technology company incorporated in Michigan and headquartered in Kalamazoo, Michigan. FAC ¶ 20. Stryker is registered to do business in California and maintains a registered agent in Glendale, California. *Id.* ¶ 22. Stryker maintains offices in San Jose and Fremont, California, and maintains principal manufacturing and distribution facilities in California. *Id.* ¶¶ 23, 25. Stryker sells its products in California and employs over 2,000 people in California. *Id.* ¶¶ 24, 26.

Stryker employed or employs Sales Associates throughout the country, including in California. *Id.* ¶ 27. Stryker advertised job openings for Sales Associates in California on its website. *Id.* ¶ 31. Stryker prepared the application for employment that prospective Sales Associates were required to complete when applying for a job in California. *Id.* ¶ 30. Stryker issued letters offering applicants jobs as Sales Associates in California and describing the terms and conditions of employment, including how applicants would be compensated and the benefits they would receive. *Id.* ¶ 32.

### II.    Plaintiffs Jonathan Jerozal and Nikki Gin

Stryker employed Plaintiff Jerozal, a California resident, as a Sales Associate in Los Angeles, California from approximately October 2020 to November 2020. *Id.* ¶ 18. Stryker employed Plaintiff Gin, a California resident, as a Sales Associate in a sales region that included Southern California and Arizona. *Id.* ¶ 19. As a condition of their employment, Stryker required all of its Sales Associates, including Jerozal and Gin, to complete a mandatory training period, often requiring 70 to 80 hours of work per week for several weeks or months. *Id.* ¶¶ 2, 45-49, 51. Stryker required some of those Sales Associates, including Gin, to attend some or all of this mandatory training in New Jersey. *Id.* ¶ 50. During this mandatory

1  training period, Stryker misclassified Sales Associates, including Plaintiffs, as

2  exempt from overtime wages and thus did not pay Sales Associates overtime

3  wages. *Id.* ¶¶ 45, 52-56. As a matter of uniform company policy and/or practice,

4  Stryker did not provide Sales Associates with meal or rest breaks and did not

5  reimburse Sales Associates for reasonable and necessary business expenses, such as

6  home internet use and data fees. *Id.* ¶¶ 57-59.

7  **III.   Stryker's Uniform Employment Policies and Practices**

8  Stryker directly or indirectly owns or owned several subsidiaries, including

9  but not limited to Stryker Employment Company, LLC and Howmedica Osteonics

10  Corp. *Id.* ¶ 28. Stryker's role in relation to its subsidiaries was more than that of a

11  typical corporate parent company. *Id.* Stryker dictated and controlled the

12  employment policies of "all employees of the Stryker Corporation (the 'Company'),

13  including all of its divisions and all of its subsidiaries and affiliates, in the United

14  States." *Id.* ¶ 34; Coleman Decl., Ex. 1, at 7. Stryker's Employee Handbook states

15  that Stryker "maintains standard definitions of employment, and employees as

16  either full-time or part-time, **and** as either exempt or non-exempt." Coleman Decl.,

17  Ex. 1, at 21. It further provides that all of Stryker's employees, "regardless of

18  division or location[,] are expected to comply with and follow each of the 13

19  corporate policies and procedures established by the Company." *Id.* at 10. Stryker's

20  Corporate Policy 1 is Stryker Corporation's Code of Conduct that "establishes

21  policies and procedures that are intended to guide employees . . . in the performance

22  of their duties and responsibilities and ensure compliance with the company's

23  commitment to ethical and lawful conduct." FAC ¶ 35; Coleman Decl., Ex. 2, at 1.

24  Stryker requires all Sales Associates to "agree to abide by the provisions of Stryker

25  Corporation's Code of Conduct." FAC ¶ 38; Coleman Decl., Ex. 1, at 8.

26  In addition, Stryker's Employee Handbook provides uniform Employment

27  Practices and Procedures applicable to all Sales Associates on topics such as

28  Attendance and Tardiness, Discipline and Prohibited Conduct, Performance,

1   Professional Appearance, Confidentiality, and Termination of Employment. FAC ¶

2   36; Coleman Decl., Ex. 1. Stryker's Employee Handbook also provides uniform

3   Compensation and Performance policies applicable to all Sales Associates on topics

4   such as Pay Practices, Overtime, Meals and Breaks, and Paychecks and Paydays.

5   FAC ¶ 37; Coleman Decl., Ex. 1. The Employee Handbook also contains a

6   "California Addendum" providing additional policies "applicable to any employee

7   in any division who works within the state of California," including all Sales

8   Associates. FAC ¶ 38; Coleman Decl., Ex. 1, at 69.

9       Stryker sponsors the Stryker Corporation 401(k) Savings and Retirement

10   Plan available to all of its Sales Associates, regardless of division or subsidiary.

11   This plan provides matching contributions to all Sales Associates who elect to defer

12   a portion of their compensation. FAC ¶ 40; Coleman Decl., Ex. 3. Stryker also

13   offers all Sales Associates, medical, prescription drug, dental and vision coverage

14   under the Stryker Corporation Welfare Benefits Plan. FAC ¶ 41; Coleman Decl.,

15   Ex. 4.

16                              **<u>LEGAL STANDARDS</u>**

17       Stryker moves to dismiss Plaintiffs' complaint under Rule 12(b)(2) and

18   12(b)(6). Under Rule 12(b)(2), "the plaintiff need only make a *prima facie* showing

19   of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v.*

20   *Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (citation omitted). The

21   Court must accept uncontroverted allegations in the Plaintiffs' complaint as true

22   and resolve all disputed facts in favor of the Plaintiffs. *Id.*

23       In deciding a 12(b)(6) motion, a court "may generally consider only

24   allegations contained in the pleadings, exhibits attached to the complaint, and

25   matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756,

26   763 (9th Cir. 2007). The court must construe the complaint in the light most

27   favorable to the plaintiff, accept all allegations of material fact as true, and draw all

28   reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*,

298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). Where a plaintiff facing a 12(b)(6) motion has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013).

## **ARGUMENT**

### I. **This Court Has Personal Jurisdiction Over Stryker.**

Under the Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant "where the defendant has sufficient 'minimum contacts' with the forum state, such that the exercise of jurisdiction would not 'offend traditional notions of fair play and substantial justice.'" *Rex Real Est. Exch., Inc. v. Rex Real Est. I, L.P.*, No. CV 18-4161-GW(SSX), 2018 WL 8335386, at *3 (C.D. Cal. Sept. 20, 2018) (Wu, J.) (citation omitted). "Personal jurisdiction may be either general or specific." *Durward v. One Techs. LLC*, No. CV 19-6371-GW-AGRX, 2019 WL 4930229, at *2 (C.D. Cal. Oct. 3, 2019) (Wu, J.). "Each depends on the quantity and quality of contacts that the defendant has with the state." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858-59 (9th Cir. 2022).

Specific jurisdiction, which is at issue here, "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). The Ninth Circuit uses the following three-part test to determine whether a defendant's "minimum contacts" meet the due process standard for the exercise of specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the

1       benefits and protections of its laws; (2) the claim must be one which

2       arises out of or relates to the defendant's forum-related activities; and

3       (3) the exercise of jurisdiction must comport with fair play and

4       substantial justice, i.e. it must be reasonable.

5  *LNS*, 22 F.4th at 859 (citation omitted). "All three prongs must be satisfied to assert

6  personal jurisdiction, but the first two prongs have a unique relationship to one

7  another. [T]his court has stated that in its consideration of the first two prongs, [a]

8  strong showing on one axis will permit a lesser showing on the other." *Id.* (citation

9  omitted).

10      The allegations in the FAC establish that Stryker has sufficient contacts with

11 California to satisfy due process. Stryker purposefully directed its activities to

12 California by, among other things, hiring and employing Plaintiffs and other Sales

13 Associates in California, requiring Plaintiffs and other Sales Associates in

14 California to complete the mandatory training program and, most importantly,

15 dictating and controlling the uniform employment policies and practices that

16 misclassified Plaintiffs and other Sales Associates in California as exempt from

17 overtime compensation—the very activities that give rise to Plaintiffs' claims.

18      **A.**     **<u>Stryker Was Plaintiffs' Employer.</u>**

19      Stryker argues that because Plaintiffs' W-2s and wage statements were issued

20 by its subsidiaries, rather than Stryker itself, it was not Plaintiffs' employer and

21 therefore personal jurisdiction over it cannot exist. This contradicts the well-

22 pleaded allegations and misapplies the law. Stryker and its subsidiaries, Stryker

23 Employment and Howmedica Osteonics Corp., operated as an integrated enterprise

24 such that Stryker may be considered, at minimum, Plaintiffs' joint employer under

25 California law and the FLSA.[1]

26

27    [1] Indeed, another court has previously determined that a reasonable jury could find
   that Stryker and Howmedica were joint employers under California's integrated

28 enterprise test. *Trosper v. Stryker Corp., Howmedica Osteonics Corp., et al.*, No.
   13-cv-0607, 2014 WL 1619052, at *3 (N.D. Cal. Apr. 22, 2014).

1        **1.    <u>The Joint Employer Doctrine Under the FLSA and</u>**
2             **<u>California Law.</u>**

3        The joint employer doctrine recognizes that "even where business entities are

4   separate, if they share control of the terms [or] conditions of an individual's

5   employment, both companies can qualify as employers." *Holtegaard v. Howroyd-*

6   *Wright Emp't Agency, Inc*., No. EDCV 20-509 JGB, 2020 WL 6051328, at *3

7   (C.D. Cal. Aug. 11, 2020) (citation omitted). Under California law, "[w]hether two

8   entities are 'joint employers' is a legal conclusion that . . . 'depends on a factual

9   inquiry into the totality of the working relationship of the parties.'" *Hibbs-Rines v.*

10  *Seagate Techs., LLC*., No. C 08–05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar.

11  2, 2009) (quoting *Vernon v. State*, 116 Cal. App. 4th 114, 124 n.7 (2004)).

12  California courts often use the "integrated enterprise" test to determine whether two

13  entities are joint employers. *Laird v. Cap. Cities/ABC, Inc.*, 68 Cal. App. 4th 727,

14  737 (1998). The integrated enterprise test considers four factors: 1) interrelation of

15  operations; 2) common management; 3) centralized control of labor relations; and

16  4) common ownership or financial control. *Id.*

17       Under the FLSA, the "economic reality" of an employment situation

18  determines whether two entities can be considered joint employers. *Goldberg v.*

19  *Whitaker House Coop.*, 366 U.S. 28, 33 (1961). "[T]he concept of joint

20  employment should be defined expansively under the FLSA." *Ray v. L.A. Cnty.*

21  *Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 848 (9th Cir. 2022) (citation omitted). The

22  Ninth Circuit has adopted a four-part "economic reality" test to determine joint

23  employer status. These factors include whether the employer: "(1) had the power to

24  hire and fire the employees, (2) supervised and controlled employee work schedules

25  or conditions of employment, (3) determined the rate and method of payment, and

26  (4) maintained employment records." *Id.* (quoting *Bonnette v. Cal. Health &*

27  *Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)). These factors guide a

28  court's analysis, but the ultimate determination must be based "upon the

-8-                                    CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Bonnette*, 704 F.2d at 1470 ("The [ ] factors . . . provide a useful framework for analysis . . . but they are not etched in stone and will not be blindly applied.").

### 2. Stryker Was Plaintiffs' Joint Employer Under the FLSA and California Law.

Under either the "totality of the working relationship" test or the "economic reality" test, Stryker qualifies as plaintiffs' joint employer. Stryker's operations were deeply interrelated with the operations of its subsidiaries; Stryker exercised centralized control over labor relations; Stryker dictated and controlled Plaintiffs' conditions of employment; and Stryker determined the rate and method of payment to Plaintiffs, including whether Plaintiffs were exempt or non-exempt. Specifically, Plaintiffs allege that:

- Stryker advertised job openings for Sales Associates on its website. FAC ¶ 31; Coleman Decl., Ex. 5.
- Stryker prepared the application for employment that prospective Sales Associates were required to complete. FAC ¶ 30.
- Stryker issued letters offering applicants jobs as Sales Associates and describing the terms and conditions of employment, including compensation and benefits. *Id.* ¶ 32.
- Stryker had access to the personnel records of all Sales Associates. *Id.* ¶ 33; Rizley Decl. ¶ 2.
- Stryker created and disseminated an Employee Handbook "applicable to all employees of the Stryker Corporation (the 'Company'), including all of its divisions and all of its subsidiaries and affiliates, in the United States." FAC ¶ 34; Coleman Decl., Ex. 1, at 7.
- Stryker's Employee Handbook states that Stryker "maintains standard definitions of employment, and employees as either full-time or part-

time, **and** as either exempt or non-exempt." It further provides that all of Stryker's employees, "regardless of division or location[,] are expected to comply with and follow each of the 13 corporate policies and procedures established by the Company." FAC ¶ 34; Coleman Decl., Ex. 1, at 21, 10.

- Stryker's Corporate Policy 1 is Stryker Corporation's Code of Conduct that "establishes policies and procedures that are intended to guide employees . . . in the performance of their duties and responsibilities and ensure compliance with the company's commitment to ethical and lawful conduct." FAC ¶ 35; Coleman Decl., Ex. 3, at 1. Stryker requires all Sales Associates to "agree to abide by the provisions of Stryker Corporation's Code of Conduct." FAC ¶ 38; Coleman Decl., Ex. 1.

- Stryker's Employee Handbook provides uniform Employment Practices and Procedures applicable to all Sales Associates on topics such as: Attendance and Tardiness, Discipline and Prohibited Conduct, Performance, Professional Appearance, Confidentiality, and Termination of Employment. FAC ¶ 36; Coleman Decl., Ex. 1.

- Stryker's Employee Handbook provides uniform Compensation and Performance policies applicable to all Sales Associates on topics such as Pay Practices, Overtime, Meals and Breaks, and Paychecks and Paydays. FAC ¶ 37; Coleman Decl., Ex. 1.

- Stryker sponsored the Stryker Corporation 401(k) Savings and Retirement Plan available to all of its Sales Associates and provided matching contributions to all Sales Associates who elected to defer a portion of their compensation. FAC ¶ 40; Coleman Decl., Ex. 3.

- Stryker offered all Sales Associates medical, prescription drug, dental and vision coverage under the Stryker Corporation Welfare Benefits

1   Plan. FAC ¶ 41; Coleman Decl., Ex. 4.

2   These allegations are more than sufficient for this Court to find that Stryker was

3   plaintiffs' joint employer at the pleadings stage.[2] *See Haralson v. United Airlines,*

4   *Inc.,* 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016) ("While [the] plaintiff is not

5   required to conclusively establish that defendants were her joint employers at the

6   pleading stage, [the] plaintiff must at least allege *some* facts in support of this legal

7   conclusion." (citation omitted)). Thus, Stryker's argument that Plaintiffs cannot

8   establish personal jurisdiction because Stryker did not employ plaintiffs fails.

9         **B.**    **Stryker Had Sufficient Minimum Contacts With California to**

10               **Establish Personal Jurisdiction.**

11         Establishing that Stryker was Plaintiffs' joint employer does not, of itself,

12   establish personal jurisdiction. It does, however, fatally undermine Stryker's

13   attempt to evade this Court's jurisdiction solely because Stryker was not the

14   specific corporate entity that issued Plaintiffs' W-2s and wage statements.

15   Regardless of who signed Plaintiffs' paychecks, Stryker had sufficient minimum

16   contacts with California to meet the due process standard for the exercise of

17   specific personal jurisdiction.

18         **1.**    **Stryker Purposefully Directed Its Activities Toward**

19               **California.**

20         The first prong of the test for specific personal jurisdiction may be satisfied

21   "by showing that a defendant either purposefully availed itself of the privilege of

22   conducting activities in California, or purposefully directed its activities toward

23   California." *Durward*, 2019 WL 4930229, at *2. Purposeful direction is analyzed

24

25   [2] Stryker argues that the Court should disregard these allegations because they are
contradicted by Aliyya Rizley's broad and conclusory statement in her Declaration

26   that "Stryker Corporation does not exercise, and has not exercised at any relevant
time, day-to-day control over Sales Associates." Mot. at 10. But these allegations

27   are not merely unsupported assertions; Plaintiffs cite to, and often directly quote,
Stryker's own documents. To ensure that the cited documents have the proper

28   foundation for consideration by the Court, Plaintiffs provide them to the Court as
Exhibits to the Declaration of Christopher E. Coleman.

under the "effects test" announced in the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *See Dole Food Co. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002). The three-part "effects test" requires that "the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. at 1111.

Typically, "the adoption of a uniform policy regarding the payment (or nonpayment) of wages"—as occurred here—"satisfies the first prong of the effects test, the intentional act requirement." *See Senne v. Kansas City Royals Baseball Corp*., 105 F. Supp. 3d 981, 1025 (N.D. Cal. 2015) (holding that Major League Baseball's uniform compensation policy, which applied to players in California, satisfied the intentional act requirement of the effects test). Further, "where an employer knows that its employee is performing work in the forum, the third requirement is also satisfied because it is reasonably foreseeable that the harm that results from the alleged violations of wage and hour laws will be felt in California." *Id.* at 1025-26. Here, Plaintiffs easily establish all three prongs. Stryker adopted a "uniform policy regarding the payment (or nonpayment) of wages." *See* FAC ¶ 34; Coleman Decl., Ex. 1, at 21, 7 (Stryker "maintains standard definitions of employment, and [of] employees . . . as either exempt or non-exempt" that are "applicable to all employees of the Stryker Corporation (the 'Company'), including all of its divisions and all of its subsidiaries and affiliates, in the United States."). And Stryker knew that Plaintiffs were working in California, as it had access to Plaintiffs' employment records. *See* Rizley Decl. ¶ 2.

Plaintiffs have also established that Stryker expressly aimed its acts toward California. In addition to hiring and employing Plaintiffs in California, Stryker expressly directed its activities toward California by:

- registering to do business in California and maintaining a registered agent there, FAC ¶ 22;

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

- maintaining two offices in California, *id.* ¶ 23;

- selling its products in California, *id.* ¶ 24;

- maintaining principal manufacturing and distribution facilities in California, *id.* ¶ 25;

- employing over 2,000 people in California, *id.* ¶ 26;

- advertising job openings for Sales Associates in California on its website, *id.* ¶ 31; Coleman Decl., Ex. 5;

- preparing the application for employment that prospective Sales Associates were required to complete when applying for a job in California, FAC ¶ 30; and,

- issuing letters offering applicants jobs as Sales Associates in California and describing the terms and conditions of employment, including how applicants would be compensated and the benefits they would receive, *id.* ¶ 32.

Indeed, Stryker's Employee Handbook contains a "California Addendum" providing policies "applicable to any employee in any division who works within the state of California." *Id.* ¶ 38. These allegations establish that Stryker purposefully directed its activities toward California.

## 2. Plaintiffs' Claims Arose Out of Stryker's Contacts With California.

"The second prong of the personal jurisdiction analysis mandates that the plaintiff[s'] claims 'arise out of or relate to the defendant's contacts with the forum.'" *LNS*, 22 F.4th at 861 (citation omitted). Plaintiffs easily satisfy this prong too. Stryker hired and employed Plaintiffs in California and required Plaintiffs to complete a mandatory training period, often requiring 70 to 80 hours of work per week for several weeks. *See* FAC ¶¶ 45-51. And most importantly, Stryker dictated and controlled the employment policies and practices that misclassified Plaintiffs as exempt from overtime compensation. Again, as Stryker's Employee Handbook

1    explains, Stryker "maintains standard definitions of employment, and [of]

2    employees . . . as either exempt or non-exempt" that are "applicable to all

3    employees of the Stryker Corporation (the 'Company'), including all of its

4    divisions and all of its subsidiaries and affiliates, in the United States." FAC ¶ 34;

5    Coleman Decl., Ex. 1, at 21, 7. Stryker also dictated and controlled the employment

6    policies and practices that failed to ensure that Plaintiffs received proper meal and

7    rest breaks and compensation for necessary business expenses. FAC ¶¶ 57-59; *see*

8    *also* Coleman Decl., Ex. 1 (Stryker's Employee Handbook Compensation and

9    Performance policies regarding Pay Practices, Overtime, Meals and Breaks, and

10   Paychecks and Paydays). These activities, directed and controlled by Stryker and

11   applicable to all Stryker employees in California including Plaintiffs, gave rise to

12   Plaintiffs' claims. Plaintiffs have satisfied the second prong.

### 3.    Exercising Jurisdiction Over Stryker Is Reasonable.

14       "If the plaintiff establishes the first two prongs, 'the burden then shifts to the

15   defendant to present a compelling case that the exercise of jurisdiction would not be

16   reasonable.'" *LNS*, 22 F.4th at 859 (citation omitted). The Ninth Circuit has

17   identified seven factors for courts to consider in assessing reasonableness: "(1) the

18   extent of the defendant's purposeful injection into the forum state's affairs; (2) the

19   burden on the defendant of defending in the forum; (3) the extent of conflict with

20   the sovereignty of the defendant's state; (4) the forum state's interest in

21   adjudicating the dispute; (5) the most efficient judicial resolution of the

22   controversy; (6) the importance of the forum to the plaintiffs' interest in convenient

23   and effective relief; and (7) the existence of an alternative forum." *Dole Food*, 303

24   F.3d at 1114.

25       Stryker fails to present any consideration that would render this Court's

26   jurisdiction unreasonable. First, Stryker claims that it did not "purposefully inject"

27   itself into California. Mot. at 12. But the analysis of purposeful interjection into the

28   forum state's affairs "parallels the question of minimum contacts" in determining

-14-

the reasonableness of an exercise of specific jurisdiction. *Senne*, 105 F. Supp. 3d at 1044 (quoting *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852 (9th Cir.1993)). "Where courts find purposeful direction, the purposeful interjection factor usually weighs in favor of a finding of reasonableness." *Id.* Thus, Plaintiffs have established purposeful injection for the same reason that they have established purposeful direction.

Second, contrary to Stryker's argument, the burden on Stryker of litigating in California is not "so gravely difficult and inconvenient" that it violates due process. *Senne*, 105 F. Supp. 3d at 1044 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)). Stryker regularly does business in California, has offices in California, and employs over 2,000 people in California. FAC ¶¶ 22-26. Whatever the burden on Stryker of defending against Plaintiffs' claims in California, it is far less than the burden that would be imposed on Plaintiffs if the Court were to dismiss their claims and require them to refile their claims in a jurisdiction in which they do not reside. *Senne*, 105 F. Supp. 3d at 1044 (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (courts consider both the burden on the defendant of litigating in the forum and the burden on the plaintiff that would result from transferring or dismissing the action)).

Next, Stryker argues that factors three through six weigh in favor of a finding of unreasonableness because Plaintiffs seek to represent a nationwide collective. Stryker does not point to any specific sovereignty interests that would weigh in favor of unreasonableness. In any event, Michigan has no compelling sovereignty interest in adjudicating claims against Stryker for alleged violations of federal law. California, however, does have a sovereignty interest in adjudicating a dispute involving California residents. *Senne*, 105 F. Supp. 3d at 1044 ("Where plaintiffs reside in California and the injury occurs here, California has a strong interest in adjudicating the dispute."). As to the question of the most efficient forum for judicial resolution, generally, "this factor is 'no longer weighed heavily given the

1    modern advances in communication and transportation.'" *Harris Rutsky & Co. Ins.*

2    *Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003) (citation

3    omitted). Stryker's own argument shows that evidence and witnesses are located

4    throughout the country, not just in Michigan. Mot. at 12 (noting that opt-ins are

5    located in Oklahoma, Idaho, and Arizona and that Gin trained in New Jersey). If

6    anything, this factor shows that the consolidation of Plaintiffs' claims in one forum

7    is the most efficient method for resolving this controversy.

8         Since none of the foregoing factors weigh (let alone weigh strongly) against

9    exercising jurisdiction, the mere existence of an alternate forum does not render this

10   Court's jurisdiction unreasonable. *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,

11   No. SACV 10-1172-AG (MLGx), 2011 WL 13153190, at *9 (C.D. Cal. May 12,

12   2011) (finding that "the existence of an alternate forum does not change" the

13   jurisdictional analysis when other reasonableness factors do not weigh strongly

14   against exercising jurisdiction). The exercise of personal jurisdiction over Stryker is

15   reasonable.

16   **II.    This Court Has Personal Jurisdiction Over the Claims of Out-of-State,
17   Opt-In Plaintiffs.**

18        Stryker argues that *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct.

19   1773 (2017), should bar out-of-state opt-in FLSA plaintiffs from bringing suit in

20   this Court. Stryker is mistaken for multiple reasons.

21        *First*, the opt-in plaintiffs bring *federal* claims in *federal* court. By contrast,

22   *Bristol-Myers* involved plaintiffs bringing *state* law claims in *state* court. This

23   distinction is critical because the decision in *Bristol-Myers* was animated by

24   concerns about interstate federalism and "must be understood through the lens of

25   those interstate federalism concerns, which the Court incorporated in its due

26   process analysis." *Sloan v. Gen. Motors*, 287 F. Supp. 3d 840, 858 (N.D. Cal.

27   2018). Indeed, the Court explicitly limited the application of its reasoning to suits

28   brought in state court. *Bristol-Myers*, 137 S. Ct. at 1783-84 ("[S]ince our decision

concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."). Thus, "[i]n contrast to *Bristol-Myers*, the due process right does not obtain here in the same manner because all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government." *Sloan*, 287 F. Supp. 3d at 858-59; *see also*, *e.g.*, *Pascal v. Concentra, Inc.*, No. 19-CV-02559-JCS, 2019 WL 3934936, at *5 (N.D. Cal. Aug. 20, 2019) ("*Bristol-Myers* does not apply in this case because Plaintiff asserts his claim in a federal court and under federal law.").

Without those interstate federalism concerns, "the due process analysis falls back on whether 'the maintenance of the suit . . . offend[s] 'traditional notions of fair play and substantial justice,' which itself focuses on the burden on the defendant (other than a concern about subjecting it to the power of a foreign sovereign)." *Sloan*, 287 F. Supp. 3d at 859 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Waters v. Day & Zimmermann NPS, Inc.*, 23 F. 4th 84, 92 (1st Cir. 2022) (holding that *Bristol-Myers* "rests on Fourteenth Amendment constitutional limits on state courts" which "does not directly limit a federal court's jurisdiction over purely federal-law claims"). Requiring Stryker to submit to the jurisdiction of this court does not offend traditional notions of fair play and substantial justice, where it employed Sales Associates in California and subjected them to its uniform policy of misclassifying employees in training as exempt.

*Second*, this Court is well suited to adjudicate the claims of both California plaintiffs and non-California opt-ins because the claims are based on the FLSA. "Unlike the [state law] claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide." *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL

5196780, at *2 (N.D. Cal. Nov. 10, 2017) (holding that *Bristol-Myers* does not divest courts of personal jurisdiction in FLSA collective actions). "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,' and in no way limited those claims to in-state plaintiffs." *Id.* (citing 29 U.S.C. 216(b)); *see also Waters*, 23 F.4th at 96-97 ("[T]he FLSA and its legislative history show that Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action."). Because "[t]he FLSA's original premise was to target those employers engaged in interstate commerce," it would make little sense to require similarly situated employees to bring suit in different states. *Waters*, 23 F.4th at 97. "Interpreting the FLSA to bar collective actions by out-of-state employees would frustrate a collective action's two key purposes: '(1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action.'" *Id.* (citation omitted); *see also Swamy*, 2017 WL 5196780, at *2 (applying *Bristol-Myers* to the FLSA "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights").

*Third*, a contrary finding would be impracticable. As the court in *Seiffert v. Qwest Corp.* explained:

> The issue of whether a district court possesses personal jurisdiction cannot be premised upon the residence of each opt-in plaintiff. No FLSA collective action case ever could reach the certification if the district court had to evaluate whether it possessed personal jurisdiction over each new opt-in plaintiff. The residences of the opt-in plaintiffs lack relevance to the issue of specific jurisdiction.

No. CV-18-70-GF-BMM, 2018 WL 6590836, at *4 (D. Mont. Dec. 14, 2018). Thus, the only workable rule is that "[t]he original plaintiff in a collective action

1    under the FLSA dictates a district court's analysis of specific jurisdiction." *Id.*

2           *Fourth*, as a consequence of the considerations above, every federal court in

3    California to have considered this issue has found that *Bristol-Myers* does not apply

4    to FLSA collective actions brought in federal court. *See Arends v. Select Med.*

5    *Corp.*, No. CV 20-11381 TJH (AGRx), 2021 WL 4452275, at *1 (C.D. Cal. July 7,

6    2021) ("This Court will follow the thirteen other districts that have held that

7    *Bristol-Myers* does not apply to FLSA actions."); *Pavloff*, 2020 WL 6828902, at *4

8    n.2 ("The Court, following other federal courts in California, finds that 'Bristol-

9    Myers does not apply to FLSA claims brought in federal court.'" (citation

10   omitted)); *Chavez v. Stellar Mgmt. Grp. VII, LLC*, No. 19-CV-01353-JCS, 2020

11   WL 4505482, at *8 (N.D. Cal. Aug. 5, 2020) ("Because this Court holds that

12   *Bristol-Myers* does not apply to federal courts and federal laws, it joins the list of

13   courts following *Swamy* and holds that *Bristol-Myers* does not apply to FLSA

14   claims brought in federal court.").

15          Rather than grapple with this unbroken authority, Stryker focuses on out-of-

16   circuit cases that come to a different conclusion. But California federal courts do

17   not stand alone in finding that *Bristol-Myers* does not apply to FLSA collective

18   actions. For example, the First Circuit held that *Bristol-Myers* does not apply to

19   FLSA collective actions. *Waters*, 23 F. 4th at 92-97. Not only did the First Circuit

20   find that the federalism concerns in *Bristol-Myers* do not operate in FLSA cases, it

21   also explained how Rule 4(k)(1)—used as a basis for applying *Bristol-Myers* in

22   many of the out-of-circuit cases cited by *Stryker*—does not mandate a different

23   result. The plain language and history of Rule 4 shows that it is limited to issues of

24   service of summons, not "constrain[ing] a federal court's power to act once a

25   summons has been properly served, and personal jurisdiction has been established."

26   *Id.* at 94 (noting that even Rule 4's title, "Summons" suggests that it is solely

27   concerned with service). Further, there is another rule—Rule 20—that already "sets

28   the limit for allowing additional parties to join a pre-existing lawsuit, permitting

-19-

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

CASE NO.: 2:22-CV-4094-GW-AFMX

joinder of those parties with claims arising out of the 'same transaction [or] occurrence' and presenting common 'question[s] of law or fact.'" *Id.* at 96 (quoting Fed. R. Civ. P. 20(a)(1)(A), (B)).

Stryker provides no reason for this Court to dissent from the unanimous voice of California district courts that *Bristol-Myers* does not apply to FLSA collective actions brought in federal court. This Court should follow its own precedents and the authority relied upon by other California federal courts and deny Stryker's motion.[3]

### III.   **This Court Has Jurisdiction Over Gin's Claim Under New Jersey Law.**

Stryker concedes, as it must, that many courts have found that *Bristol-Meyers* does not require unnamed class members to demonstrate personal jurisdiction. Mot. at 21. Instead, Stryker argues that, under *Bristol-Myers*, California lacks the requisite "connection" to Gin's New Jersey law claim. *Id.* This argument is contrary to settled law and the facts as alleged in the complaint.

#### A.   **Only a *Relationship* Between the Suit and Defendant's Forum State Contacts Is Required.**

The Supreme Court has *rejected* the defendant's claim that *Bristol-Myers* changed the jurisdictional analysis such that the link between the defendant's

---

[3] For the same reason, the Court should deny Stryker's motion to dismiss the FLSA claims asserted on behalf of unnamed non-resident plaintiffs under Rule 12(b)(6). Moreover, Stryker's motion under Rule 12(b)(6) is premature. Courts have generally "declined to reach the question of personal jurisdiction before individuals have even been given notice of the collective action and an opportunity to op[t]-in." *Iannotti v. Wood Grp. Mustang*, No. 20-cv-958-DWD, 2021 WL 2805812, at *5 (S.D. Ill. July 6, 2021). The reason is simple: "Defendants generally cannot preemptively prevent a party from joining a suit due to lack of jurisdiction; they must wait until the party attempts to join, then move for dismissal." *Id.* (quoting *Knecht v. C & W Facility Servs., Inc.*, 534 F. Supp. 3d 870, 876 (S.D. Ohio 2021)); *see also Warren v. MBI Energy Servs., Inc.*, No. 1:19-cv-00800-RM-STV, 2020 WL 5640617, at *2 (D. Colo. Sept. 22, 2020) (addressing the application of *Bristol-Myers* at the conditional certification stage "puts the proverbial cart before the horse"); *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *7-8 (E.D. Pa. July 8, 2020) ("[T]he Court cannot decide whether it has jurisdiction over individuals who have not yet opted-in because they are not parties to the collective action.").

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

1   conduct and the claims "must be causal in nature." *Ford Motor Co. v. Montana*

2   *Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (rejecting defendant's

3   argument that jurisdiction "attaches only if the defendant's forum conduct *gave rise*

4   to the plaintiff's claims"). Instead, the "rule demands that the suit 'arise out of *or*

5   *relate to* the defendant's contacts with the forum.'" *Id.* (quoting *Bristol-Myers*, 137

6   S. Ct. at 1780). In other words, specific jurisdiction may be established *either* by

7   showing that the suit arises out of the defendant's contacts with the forum *or* by

8   showing that the suit *relates to* the defendant's conduct with the forum. *Id.* ("None

9   of our precedents has suggested that only a strict causal relationship between the

10  defendant's in-state activity and the litigation will do.").

11          While a causal connection between a defendant's contacts and a plaintiff's

12  claim is never required, such a causal connection is unquestionably sufficient. *Id.*

13  ("The first half of that standard asks about causation; but the back half, after the

14  'or,' contemplates that some relationships will support jurisdiction without a causal

15  showing."). As such, one of the Ninth Circuit's long-standing tests for the "arise out

16  of or relate to" prong of the personal jurisdiction analysis is framed in explicitly

17  causal terms and asks whether "'but for' the contacts between the Defendants and

18  the forum state, the cause of action would not have arisen." *Quimby-Johnson v.*

19  *Bortree*, No. SACV 19-662 JVS (DFMx), 2019 WL 4391131, at *6 (C.D. Cal. June

20  26, 2019). The "but for" rule is often applied in employment law cases. For

21  instance, in *Quimbly-Johnson*, the Central District found that out-of-state

22  defendants' knowing employment of a plaintiff sales representative who relocated

23  to California was sufficient to meet the requirement that the claims "aris[e] out of

24  forum-related activities." *Id.*  The court reasoned that the requirement was met

25  because plaintiff "would not have suffered harm *but for* the [defendants']

26  employment of [plaintiff], a California resident." *Id.*; *see also Senne*, 105 F. Supp.

27  3d at 1042-43 ("arising out of prong" was satisfied where the court held that "but

28  for" out-of-state Major League Baseball teams' recruiting, scouting, and contractual

CASE NO.: 2:22-CV-4094-GW-AFMX

PLAINTIFFS' OPPOSITION TO DEFENDANT STRYKER CORPORATION'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6)

relationships with named plaintiff minor league players from California, their wage and hour claims would not have occurred).

### B.     But For Stryker's Employment of Gin in California, Her Wage Claims Would Not Have Arisen.

Here, Gin's claim for underpayment *arises out of and relates to* Stryker's employment of Gin *in California*. Relation between Stryker's contacts and Gin's claims is evident from the entire California-centered course of dealing between the parties (which is what courts examine when determining the connection between a legal claim and the forum state). *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020). Indeed, Gin's hiring, mandatory training, and year-long employment were all undertaken by Stryker "for the purpose of obtaining benefits from [] California" in the form of sales. *Id.* (holding that a defendant's promise for the purpose of "obtaining benefits from a California corporation" weighed in favor of personal jurisdiction). Stryker also sent numerous documents regarding her employment (from which Gin's claims arose) to California, including its "employment offer, written contract, [and] paychecks." Rizley Decl. ¶ 9; *Alexis v. Rogers*, No. 15CV691-CAB-BLM, 2016 WL 11707630, at *8 (S.D. Cal. Feb. 26, 2016). Additionally, Stryker must have known that the harm of unpaid overtime would be felt in California even if her training occurred in New Jersey; Stryker paid Gin using a California tax ID number and applied California state income taxes to each paycheck. *See* FAC ¶ 19; Rizley Decl., Ex. C & D. The entire course of Stryker and Gin's dealing is a nearly year-long employment relationship whose center of gravity was in California based on its benefits to Stryker, its long-term area of operation, and the location of harm that she ultimately suffered.

Further, Gin could even satisfy strict causation through the *but for* test (though that is not the standard). Gin was employed in California, misclassified as exempt in California, and paid (and underpaid) in California for overtime she

-22-

worked while training in New Jersey. FAC ¶¶ 19, 45-46; Rizley Decl. ¶ 9. *But for* Stryker's decision to hire Gin, a resident of California, as a California-based Sales Associate, she would not have been required to travel to New Jersey to complete mandatory training and suffered harm as a result of Stryker's employment policies. FAC ¶¶ 19, 45-46; Rizley Decl. ¶ 9. The causal relationship between Stryker's decision to employ Gin as a Sales Associate in California and mandate training in New Jersey where she was misclassified as exempt forms the requisite "connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1776. Stryker's conduct in California *caused* her suit.

Stryker cites a number of cases to assert that *Bristol-Myers* should apply to named plaintiffs in a class action, but more recent cases from this district suggest otherwise.[4] Mot. at 21. The cases Stryker cites are also easily distinguishable; each is a products liability suit where plaintiffs were non-residents who did not purchase or suffer harm from the products in question within the forum.[5] In the present matter, Gin is and was a resident of the forum state, was hired to work in the forum

---

[4] *See, e.g.*, *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1208 (C.D. Cal. 2021) ("This Court finds the majority position, and the position of the Seventh and D.C. Circuits, compelling, and holds that *Bristol-Myers Squibb* has no impact on class action practice."); *Cabrera v. Bayer Healthcare, LLC*, No. LA CV17-08525 JAK (JPRx), 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) ("The decisions concluding that *Bristol-Meyers* does not apply in the class action context are more persuasive."); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. LA ML19-02905 JAK (FFMx), 2022 WL 522484, at *11 (C.D. Cal. Feb. 9, 2022) (collecting cases).

[5] *See Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1167 (C.D. Cal. 2019) ("[T]he issue in this case is whether *Bristol-Myers* applies to the forty out-of-state named plaintiffs bringing claims that have no connection to California and are based on the laws of twenty different states."); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) ("Plaintiff Robison's contacts are indistinguishable: he is a Maryland resident who purchased his S6 in Maryland and suffered all of his injuries in Maryland."); *Gaines v. Gen. Motors, LLC*, No. 17CV1351-LAB (JLB), 2018 WL 3752336, at *1-2 (S.D. Cal. Aug. 7, 2018) (named plaintiff "bought her allegedly defective car [in Pennsylvania], the sunroof leaked there, and GM denied her warranty coverage there"); *Reitman v. Champion Petfoods USA, Inc.*, No. CV 18-1736-DOC (JPRx), 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) ("[N]o nonresident Plaintiff states that she purchased Champion pet foods in California, saw Champion pet food labels in California, or suffered any injury in California.").

state, suffered the harm of underpayment in California, and her claims naturally flowed from Stryker's contacts with California, *i.e.*, its decision to hire her to sell its products in California. The requisite connection is far more apparent and substantial than in any of the cases Stryker cites.

## C.   Gin's Choice to Pursue Her Claims Under New Jersey Law Does Not Minimize Defendant's California Contacts.

Finally, Stryker argues that Gin and the New Jersey Class claims have no connection to California because these claims are pled under the New Jersey Wage and Hour law. Mot. at 20, 22. This argument conflates choice of law concepts with the second prong of the personal jurisdiction analysis, whether Gin's claims arise out of or relate to her claims. On this motion, "the issue is personal jurisdiction not choice of law," so Gin's decision to pursue her claims under New Jersey law has no bearing on this Court's exercise of personal jurisdiction over Stryker. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 778 (1984) (citation omitted) ("[A]ny potential unfairness in applying New Hampshire's statute of limitations to all aspects of this nationwide suit [brought by a New York resident against an Ohio resident] has nothing to do with the jurisdiction of the Court to adjudicate the claims."); *Kumarelas v. Kumarelas*, 16 F. Supp. 2d 1249, 1255 (D. Nev. 1998) ("Even if a conflict does exist between Nevada's laws and the 'fundamental substantive social policies' of California, such a dispute can be resolved through choice of law rules, not jurisdiction."). Nor may Stryker suggest that a California federal court is not competent to adjudicate standard issues of New Jersey law under the second prong. *See, e.g.*, *Tran v. Muhammad*, No. CV 20-01433-CJC (SKx), 2020 WL 5092832, at *3 (C.D. Cal. Apr. 10, 2020) (dismissing motion to transfer venue where Georgia state law claims arose out of plaintiff's employment in California and noting that "federal courts are deemed capable of applying the substantive law of other states"). Stryker's argument is unsupported to the extent it states that the application of another forum's law supports its argument on personal jurisdiction. This court has

1    personal jurisdiction over Gin's claims and those of the New Jersey class.

2                                    **CONCLUSION**

3            For the foregoing reasons, Plaintiffs have met their burden of establishing

4    that this Court has personal jurisdiction over Stryker, over the claims of the non-

5    resident opt-ins, and over Gin's claim under New Jersey law. Defendant's motion

6    should be denied.

7    Dated: December 22, 2022            Respectfully submitted,

8

9                                        Lin Chan (SBN 255027)
                                         lchan@lchb.com
10                                       LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
11                                       275 Battery Street, 29th Floor
                                         San Francisco, CA 94111
12                                       Telephone: (415) 956-1000
                                         Facsimile: (415) 956-1008
13
                                         Rachel Geman (*admitted pro hac vice*)
14                                       rgeman@lchb.com
                                         LIEFF CABRASER HEIMANN &
15                                       BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
16                                       New York, NY 10013
                                         Telephone: (212) 355-9500
17                                       Facsimile: (212) 355-9592

18                                       Christopher E. Coleman (*admitted pro hac vice*)
                                         ccoleman@lchb.com
19                                       LIEFF CABRASER HEIMANN &
                                         BERNSTEIN, LLP
20                                       222 2nd Avenue South, Suite 1640
                                         Nashville, TN 37201
21                                       Telephone: (615) 313-9000
                                         Facsimile: (615) 313-9965
22
                                         Paolo Meireles (*admitted pro hac vice*)
23                                       pmeireles@shavitzlaw.com
                                         SHAVITZ LAW GROUP, P.A.
24                                       951 Yamato Road, Suite 285
                                         Boca Raton, FL 33431
25                                       Telephone: (561) 447-8888
                                         Facsimile: (561) 447-8831
26

27                                       *Counsel for Plaintiffs and the Proposed FLSA*
                                         *Collective and Classes*
28