# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-4094-GW-AFMx | Date | January 10, 2023 |
|---|---|---|---|
| Title | *Jonathan Jerozal v. Stryker Corporation* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

PROCEEDINGS:     **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT STRYKER CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(2) AND 12(b)(6) [54]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion to Dismiss [54] set for hearing on January 12, 2023 at 8:30 a.m.

Initials of Preparer    JG

*Jonathan Jerozal v. Stryker Corporation*; Case No. 2:22-cv-04094-GW-(AFMx)
Tentative Ruling on Motion to Dismiss First Amended Complaint

## I.      Background

### A.  Procedural Background

Plaintiffs Jonathan Jerozal and Nikki Gin (collectively, "Plaintiffs") brought this action against Defendant Stryker Corporation ("Defendant" or "Stryker") alleging various labor law violations.  This is a hybrid action, seeking to bring: (1) a collective action under the Fair Labor Standards Act ("FLSA"); (2) a Rule 23 class action based on violations of California wage and hour laws, as well as the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) a Rule 23 class action based on violation of New Jersey wage and hour law; and (4) a representative action under California's Private Attorneys General Act ("PAGA").  The current operative pleading in the action, the First Amended Complaint ("FAC"), sets out the following causes of action: (1) failure to provide overtime wages in violation of FLSA, 29 U.S.C. § 201; (2) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194 and IWC Wage Order; (3) failure to provide meal and rest breaks in violation of Cal. Lab. Code §§ 218.5, 226.7, 512, 1198, and IWC Wage Order; (4) failure to reimburse employees for business expenses in violation of Cal. Lab. Code § 2802; (5) failure to timely pay wages in violation of Cal. Lab. Code §§ 204, 210; (6) failure to pay earned wages upon discharge in violation of Cal. Lab. Code §§ 201-203; (7) failure to provide accurate wage statements in violation of Cal. Lab. Code §§ 226, 226.3; (8) failure to keep requisite payroll records in violation of Cal. Lab. Code §§ 1174(d), 1174.5; (9) violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; (10) civil penalties pursuant to Cal. Lab. Code § 2698 *et seq.*; and (11) failure to pay overtime wages in violation of N.J.S.A. 34:11-56(a) through 34:11-56(a)(3).  *See generally* FAC, Docket No. 52, ¶ 2.

Now before the Court is Stryker's Motion to Dismiss Plaintiffs' FAC, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  *See* Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(2) and 12(b)(6) ("Motion" or "Mot."), Docket No. 54. Plaintiffs filed an Opposition ("Opposition" or "Opp."), *see* Docket No. 58, and Stryker filed a Reply ("Reply"), *see* Docket No. 59.

### B.  Factual Background

Plaintiff Jerozal, a California resident, alleges that he was employed by Stryker as a Sales

Associate in Los Angeles, California from October 2020 to November 2020.  FAC ¶ 18.  Plaintiff Gin, a California resident, alleges that she worked in Los Angeles, California as a Sales Associate and was assigned to a sales region that included Southern California and Arizona.  *Id.* ¶ 19.  In addition, Plaintiff Gin alleges that she worked as a Sales Associate trainee in Stryker's mandatory training program, which allegedly took place in New Jersey.  *Id.*

Stryker is a multinational medical technology company "incorporated under Michigan law and headquartered in Kalamazoo, Michigan."  *Id.* ¶ 20.  Plaintiff alleges that Stryker is registered to do business in California and maintains a registered agent in Glendale, California, *id.* ¶ 22; maintains two offices in California, *id.* ¶ 23; sells its products in California, *id.* ¶ 24; maintains its principal manufacturing and distribution facilities in California, *id.* ¶ 25; employs over 2,000 people in California, *id.* ¶ 26; prepares the application for employment that prospective Sales Associates are required to complete when applying for employment with Stryker, *id.* ¶ 30; advertises job openings for Sales Associates in California on its website, *id.* ¶ 31; and issues Sales Associates their offer letters of employment, *id.* ¶ 32.

Stryker asserts that its indirect subsidiary, Stryker Employment Company, LLC, employed Plaintiff Jerozal, as evidenced by his Form W-2 and wage statements.  Mot. at 4; *see also* Declaration of Aliyya Rizley ("Rizley Decl."), Docket No. 54-1, at ¶¶ 6-7, Exs. A, B.  Stryker further asserts that Plaintiff Gin was employed by subsidiary Howmedica Osteonics Corp., as evidenced by her Form W-2 and wage statements.  Mot. at 4; *see also* Rizley Decl. ¶¶ 8-9, Exs. C, D.

Plaintiffs allege that Stryker "directly or indirectly owns several subsidiaries, including but not limited to Stryker Employment Company, LLC and Howmedica Osteonics Corp.," FAC ¶ 28, the two entities Stryker claims were Plaintiffs' respective employers, Mot. at 4.  However, Plaintiffs claim that Stryker's "role in relation to its subsidiaries is more than that of simply a corporate parent company."  FAC ¶ 28.  Rather, Plaintiffs allege that Stryker "plays an active role in the employment and working conditions of Sales Associates" and therefore Stryker "and its subsidiaries operate as an integrated enterprise such that [Stryker] may be considered Plaintiffs' joint employer."  *Id.*

Additionally, Plaintiffs allege that Stryker "creates and disseminates an Employee Handbook 'applicable to all employees of the Stryker Corporation (the 'Company'), including all of its divisions and all of its subsidiaries and affiliates, in the United States.'"  *Id.* ¶ 34.  Plaintiffs

further assert that Stryker's Employee Handbook "provides uniform Employment Practices and Procedures [and uniform Compensation and Performance policies] applicable to all of [Stryker]'s employees including all Sales Associates, including Plaintiffs and all members of the Classes, Collective, and PAGA Group . . ." *Id.* ¶¶ 36-37.  The Employment Handbook also contains a "California Addendum" with California-specific policies applicable to "any employee in any U.S. division who works within the state of California." *Id.* ¶ 38.

To date, three individuals who worked in states other than California have filed consent to join forms with the Court: (1) Plaintiff Brian Jamison worked for Stryker in Oklahoma; (2) Plaintiff Tevin Hood worked for Stryker in Arizona; and (3) Plaintiff Yelena Hays worked for Stryker in Idaho.  *See* Docket Nos. 11 & 47.  Stryker contends that these individuals were actually employed by Stryker Employment Company, LLC.  Mot. at 5.

## II.  Legal Standard

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a matter for "lack of jurisdiction over the person."  When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish the court's personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The plaintiff may meet this burden by making a "prima facie showing of jurisdictional facts." *Id.* (quotation omitted).  "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted).  "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quotation omitted).  However, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. § 410.10.  A court may exercise personal jurisdiction over a nonresident defendant

consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8 & 9 (1984). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quotation omitted). Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test to evaluate whether the court may exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

The Supreme Court recently clarified the rationale of the specific-jurisdiction framework, stating that unlike general jurisdiction, specific jurisdiction:

> covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." [*Burger King*, 471 U.S. at 475]. The defendant, we have said, must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." [*Hanson v. Denckla*, 357 U.S. 235, 253 (1958)]. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." [*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)]. They must show that the defendant deliberately "reached out beyond" its home – by, for example, "exploiting a market" in the forum State or entering a contractual relationship centered there. [*Walden*, 571 U.S. at 285]. Yet even then – because the defendant is not "at home" – the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. [*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S.

Ct. 1773, 1780 (2017); *see, e.g.*, *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales*, 466 U.S. at 414; *International Shoe*, 326 U.S. at 319].   Or put just a bit differently, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." [*Bristol-Myers*, 137 S.Ct., at 1780].

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (cleaned up).

The plaintiff bears the burden of establishing the first two prongs; otherwise there is no personal jurisdiction established in the forum state. *Id.* If the plaintiff succeeds on the first two prongs, then the defendant must present a compelling case as to why exercising jurisdiction would be unreasonable. *Id.*

**B.  Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy

attached to the 12(b)(6) motion").

## III.  **Discussion**

Stryker moves to dismiss Plaintiffs' FAC on three grounds.  *See generally* Mot.  First, Stryker argues that the Court lacks personal jurisdiction over it.  *Id.* at 2.  Second, Stryker claims that the United States Supreme Court's ruling in *Bristol-Myers Squibb v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017), applies to FLSA collective actions and precludes the Court from exercising jurisdiction over the FLSA claims asserted by out-of-state, opt-in plaintiffs.  *Id.*  Finally, Stryker further asserts the Court lacks personal jurisdiction over Plaintiff Gin's claims arising under New Jersey law for conduct that allegedly occurred in New Jersey.  *Id.* at 3.

### A.  **Whether This Court Lacks Jurisdiction Over Stryker**

#### a.  General Jurisdiction

The Supreme Court has held that a corporation may be subject to general jurisdiction in a state only if its contacts with that state are so "continuous and systematic" that it is "essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Stryker is a corporation incorporated under Michigan law and has its principal place of business in Michigan.  Mot. at 8; *see also* FAC ¶ 20.  Plaintiffs do not argue that this Court has general jurisdiction over Stryker. *See generally* Opp.  The Court would conclude, therefore, that Stryker is not subject to general jurisdiction in California.

#### b.  Specific Jurisdiction

Here, Plaintiffs oppose Stryker's Motion, asserting two principal theories for specific personal jurisdiction over Stryker: (1) based on Stryker's own contacts with California; and (2) based on Stryker's joint employer relationship with its subsidiaries, Stryker Employment Company, LLC and Howmedica Osteonics Corp.  *See* Opp. at 7-16.

As a preliminary matter, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). In fact, "courts within this circuit routinely reject the use of a 'single enterprise' theory as a basis to establish personal jurisdiction."  *Krantz v. Bloomberg L.P.*, No. 2:21-CV-06275-AB-(RAOx), 2022 WL 2102111, at *5 (C.D. Cal. Jan. 19, 2022); *see also Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15-CV-04456-PJH, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016) (holding

that "'single enterprise' and 'joint employer' theories are bases for liability, not tests for personal jurisdiction"). Accordingly, as Plaintiffs concede, establishing that Stryker was Plaintiffs' joint employer does not, in itself, establish personal jurisdiction here. Opp. at 1, 11. Therefore, Plaintiffs argument for jurisdiction relies on Stryker's own contacts with California, primarily relying on Stryker's adoption and implementation of uniform corporate employment policies and procedures. *See id.* at 11.

The Court will apply the three-prong test articulated by the Ninth Circuit in *Schwarzenegger*, 374 F.3d at 802, as delineated, *supra*, to evaluate whether it may exercise specific jurisdiction over Stryker. *See In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) ("Since the joint employer issue is not relevant to the specific jurisdiction analysis, the court will analyze defendant parent's contacts under the three-part analysis [for minimum contacts to establish specific jurisdiction].").

### i. Purposeful Direction

The first specific jurisdiction factor requires Plaintiffs to demonstrate that Stryker either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California. *See Schwarzenegger*, 374 F.3d at 802. To determine whether Stryker has purposefully directed its actions towards California, both parties invoke the "effects" test derived from *Calder v. Jones,* 465 U.S. 783 (1984).[1] "The effects test, which is based on the Supreme Court's decision in *Calder* . . . requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc.*, 647 F.3d at 1228 (internal quotations and citation omitted). The Supreme Court recently revisited the test and emphasized that "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "The proper question is

---

[1] The Court notes that "[w]age and hour claims asserted under the FLSA and state law are neither tort nor contract claims." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1025 (N.D. Cal. 2015). Some courts have "likened FLSA claims to tort claims and have applied the purposeful direction standard." *Telles v. Li*, No. 11-cv-1470 LHK, 2013 WL 5199811, at *4 (N.D. Cal. Sept. 16, 2013) (citing *Enriquez v. Interstate Grp., LLC*, No. 11-cv-05155 YGR, 2012 WL 3800801, at *3 (N.D. Cal. Aug. 31, 2012)). Other courts have likened violations under the statute to common law contract breach. *See, e.g., Pavlo v. Stiefel Laboratories, Inc.,* No. 78, 1979 WL 105, at *6 (S.D.N.Y. Nov. 27, 1979). Given that Plaintiffs allege that Stryker dictated and controlled the employment policies that misclassified them as exempt from overtime compensation and failed to ensure they received proper meal and rest breaks and reimbursements for business expenses, this "lends itself to the intentional tort analysis" which both parties applied in their briefing. *See Holliday v. Lifestyle Lift, Inc.,* No. 09-cv-4995 RS, 2010 WL 3910143, at *3 (N.D. Cal. Oct. 5, 2010).

not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* The *Calder* test requires "something more" than mere foreseeability; the effects in the third prong must be expressly aimed at the forum state. *Pebble Beach Co.*, 453 F. 3d at 1156.

Here, Plaintiffs argue that Stryker adopted uniform employment policies and practices through its Employee Handbook, which Stryker made expressly applicable to Plaintiffs' employment in California. Opp. at 2, 12.[2] Specifically, Plaintiffs argue that Stryker "dictated and controlled the employment policies and practices that misclassified Plaintiffs as exempt from overtime compensation," *id.* at 13, as well as the "employment policies and practices that failed to ensure Plaintiffs received proper meal and rest breaks and compensation for necessary business expenses," *id.* at 14. Under the *Calder* effects test, these uniform corporate employment decisions operate as the "intentional act."

Stryker counters that Plaintiffs cannot show that it "committed the intentional acts that [Plaintiffs] attribute to it in the FAC, much less directed them towards California" because it did not employ Plaintiffs. Mot. at 10. More succinctly, because Stryker was not Plaintiffs' employer, Stryker argues that Plaintiffs cannot show purposeful direction. *Id.* at 10-11.

However, Stryker does not dispute Plaintiffs' allegations that it adopted a uniform corporate employment policy – as evidenced in its Employee Handbook – that applied to all California employees, including Plaintiffs. *See generally* Mot.; *see also generally* Reply. Instead, Stryker focuses its argument on whether or not it employed Plaintiffs. *See id.* But whether an employment relationship existed between Stryker and Plaintiffs goes to liability and not to whether Stryker has sufficient minimum contacts with California for the Court to exercise personal jurisdiction here. Even if Stryker is simply a nonresident parent corporation of Plaintiffs' purported actual employers, the Court must still examine whether Stryker has its own contacts with California sufficient to establish personal jurisdiction. Moreover, although Stryker disputes

---

[2] The Court notes Stryker's argument that Plaintiffs' proffered evidence (*i.e.,* the Employee Handbook) is not admissible because it was attached to a declaration that did not lay the proper foundation. Reply at 5. However, the Employee Handbook and other evidence were cited in the Plaintiffs' FAC and included as linked exhibits therein. A court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). Because the authenticity of the materials in the FAC is not disputed and Plaintiffs have both alleged the existence of the materials in the FAC and the FAC "necessarily relies" on such materials, the Court will consider these items.

the status of Plaintiffs as employees of Stryker, the Court is obligated to resolve all disputed facts in Plaintiffs' favor and Plaintiffs allege that they are employees of Stryker.  *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (holding that all uncontroverted allegations in the complaint are taken as true and all disputed facts are resolved in plaintiff's favor); *see also Quimby-Johnson v. Bortree*, No. SACV 19-662 JVS (DFMx), 2019 WL 4391131, at *4 (C.D. Cal. June 26, 2019) (noting that while defendants disputed plaintiff's status as an employee, even submitting a declaration to that effect, the court was obligated to resolve all disputed facts in plaintiff's favor and plaintiff alleged that he was an employee).

"Typically, the adoption of a uniform policy regarding the payment (or nonpayment) of wages satisfies the first prong of the effects test, the intentional act requirement."  *Senne*, 105 F. Supp. 3d at 1025.  Plaintiffs have shown that Stryker created the Employee Handbook, containing various uniform employment policies, and directed the Employee Handbook at California.  *See* FAC ¶¶ 34-38.  Specially, the FAC and linked exhibit provide that the Employee Handbook "is applicable to all employees of Stryker Corporation . . . including all of its divisions and all of its subsidiaries and affiliates in the United States."  *Id.* ¶ 34.  The Employee Handbook contains uniform employment policies regarding pay practices, overtime, meals and breaks, and paychecks. *Id.* ¶ 37.  In addition, the Employee Handbook contains a "California Addendum" which contains additional policies "applicable only to employees in California."  *Id.* ¶ 38.  Accordingly, Plaintiffs have made a prima facie showing that Stryker was responsible for drafting the policies governing their employment in California.

Stryker argues that Plaintiffs "improperly focus[] on purportedly uniform policies and procedures," Reply at 6, but have not contested Plaintiffs' prima facie showing that Stryker created the Employee Handbook and directed the Employee Handbook at California.  Instead, Stryker argues that it has submitted evidence that it did not exert day-to-day operational control over Plaintiffs or other Sales Associates, *id.*, and that Plaintiffs' evidence that "merely bears on the potential existence of joint employer / integrated enterprise status . . . is irrelevant," *id.* at 4. However, as noted above, Plaintiffs are not relying on evidence of joint employer status to establish personal jurisdiction here.  *Cf. Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *5 (N.D. Cal. May 20, 2008) ("[A] subsidiary's use of policies and handbooks created by the parent is insufficient to establish personal jurisdiction").  Rather, Plaintiffs are arguing that Stryker's own minimum contacts with California are sufficient to

exercise jurisdiction.  Opp. at 11.

As to express aiming and harmful effects in the forum, these requirements are satisfied. Stryker does not deny that it operates in California and that its allegedly unlawful employment practices – stemming from its Employee Handbook – apply in California.  In fact, the Employee Handbook expressly states that it applies to "all employees" including employees of its subsidiaries throughout the United States, and even includes a "California Addendum" with policies specific to California employees.  FAC ¶ 34 n. 9.  Accordingly, even if Plaintiffs were employed by subsidiaries of Stryker, Plaintiffs have shown that Stryker adopted and mandated uniform corporate policies that applied to all of its employees, including employees of its subsidiaries, and those policies were applicable to work performed in California by its California employees.  As a result, Plaintiffs have made a prima facie showing that Stryker both targeted California, and that Stryker would reasonably have expected that any harm caused by those policies would be felt in California.

The Court, therefore, would find that Stryker has purposefully directed its activities towards California.

### ii.   Claims Arise Out of or Relate to Contacts with the Forum

The second specific jurisdiction factor requires Plaintiffs to demonstrate that their claims "arise out of or relate to" Stryker's contacts with California.  *See Bristol-Myers,* 137 S. Ct. at 1780. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted).  "The Ninth Circuit adopts a broad, 'but for' test of relatedness," but it does require "some degree of proximate causation."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) (citing *Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)).

Plaintiffs argue that "Stryker dictated and controlled the employment policies and practices that misclassified Plaintiffs as exempt from overtime compensation" and "also dictated and controlled the employment policies and practices that failed to ensure that Plaintiffs received proper meal and rest breaks and compensation for necessary business expenses."  Opp. at 13-14. Accordingly, Plaintiffs argue that "[t]hese activities, directed and controlled by Stryker and applicable to all Stryker employees in California including Plaintiffs, gave rise to Plaintiffs'

10

claims," satisfying the second prong of the specific jurisdiction test. *Id.* at 14. Stryker counters that the "requisite connection is absent here" because "there is no specific connection between the identified contacts and the specific claims asserted." Reply at 6.

The Court would find that Plaintiffs have met their burden of establishing a prima facie showing that their claims against Stryker could arise out of or relate to Stryker's uniform corporate employment policies that applied to all California employees, including California employees of its subsidiaries, and that these contacts gave rise to Plainitffs' California wage and hour claims. The allegations in the FAC and the accompanying linked exhibits to the FAC would lead the Court to conclude that Plaintiffs' claims relate to the employment procedures and policies established under Stryker's ultimate authority.[3]

Accordingly, the Court would find that Plaintiffs have established a prima facie case that their claims sufficiently relate to Stryker's contacts with the forum.

### iii.   Exercise of Jurisdiction Is Reasonable

The final specific jurisdiction factor assesses whether Stryker has demonstrated that it would be unreasonable for this Court to exercise personal jurisdiction over it. *Schwarzenegger*, 374 F.3d at 802. Because Plaintiffs have satisfied the first two prongs of specific jurisdiction, the burden shifts to Stryker to "present a compelling case that the exercise of jurisdiction would not be reasonable" under the third prong. *CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 973 (C.D. Cal. 2011) (internal quotations and citation omitted). The Ninth Circuit has articulated seven factors that are relevant to that determination: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum. *Callaway Golf Corp. v. Royal Canadian Golf*

---

[3] In a footnote, Stryker argues that "because Plaintiff Jerozal is the only plaintiff asserting claims based on alleged conduct occurring in California, the claims of Plaintiffs Hood, Hays, Jamison, and Gin, who all purportedly trained out-of-state, necessarily cannot serve as the basis for the exercise of specific personal jurisdiction over [Stryker] in *California*." Mot. at 10 (emphasis in original). However, in its Reply, Stryker concedes that "Plaintiff Gin asserts causes of action under California law for failure to provide meal breaks, rest periods, accurate wage statements, business expense reimbursement, and timely wages upon discharge, *while in California*." Reply at 16 (emphasis added). Accordingly, the basis for exercising specific personal jurisdiction over Stryker is based on alleged conduct occurring in California by *both* named Plaintiffs.

*Ass'n*, 125 F. Supp. 2d 1194, 1205 (C.D. Cal. 2000).

Stryker predominantly argues that the burden would be "significant" if forced to defend against this action in California.  Mot. at 12.  As a company headquartered and incorporated in Michigan, Stryker argues that any potential witnesses would have to travel to California to defend against this action.  *Id.*  In addition, Stryker argues that factors three through six are "complicated by Plaintiffs' desire to represent a nationwide class of individuals." *Id.*  Although Plaintiff Jerozal was allegedly trained in California, Stryker argues that "his proposed collective includes individuals who allegedly were trained all throughout the country . . . making questions of efficiency and state interests subject to considerable variance throughout the course of the litigation." *Id.*

In response, Plaintiffs argue that Stryker purposefully interjected itself into California and contests that Stryker would face significant burdens by litigating here in California.  Opp. at 15.  Further, Plaintiffs argue that Michigan has no compelling sovereignty issue in adjudicating claims against Stryker for alleged violations of federal law, but California does have an interest in adjudicating a dispute involving California residents.  *Id.*

### 1.  *Purposeful Interjection*

As further assessed in Section III(A)(b)(i) above, Stryker purposefully availed itself of California law.

### 2.  *Burden in Litigating*

The second factor "examine[s] the burden on the defendant in light of the corresponding burden on the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986)); *see also Hill v. Opus Corp.*, No. CV 10–04806 MMM (VBKx), 2011 WL 13272268, at *10 (C.D. Cal. Apr. 7, 2011) (same).  Because Stryker has its principal place of business in Michigan, it would be more burdensome for Stryker to defend against the instant action in California than in Michigan.  However, it would equally burden Plaintiffs, who are California citizens, to litigate in Michigan than in California. *See Nissan Motor Co., Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000) ("[D]efendant's burden of litigating in this forum must be weighed against the plaintiffs' convenience").  "[T]he advances in transportation and telecommunications and the increasing interstate practice of law" also decreases the burden on Stryker. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).  While the second factor weighs slightly in Stryker's

favor, the Court would find that it is not to the extent that the burden on Stryker would constitute a deprivation of due process.

### 3. *Sovereignty*

The third factor – conflict with the sovereignty of Stryker's state – appears neutral. Stryker makes no argument as to whether litigation in California would create a conflict with the sovereignty of Michigan, nor does the record indicate such a conflict. In its Reply, Stryker argues that New Jersey courts would have an interest in how a California court might adjudicate Plaintiff Gin's overtime claim brought under New Jersey law. Reply at 8. However, this argument does not present any conflict with a "defendant's state" (*i.e.*, Michigan). Further, while New Jersey courts may very well have an interest in the adjudication of Plaintiff Gin's claim brought under New Jersey law, this Court is certainly capable of applying the law of a different state and does so routinely. *See also Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801-JCS, 2014 WL 5422576, at *7 (N.D. Cal. Oct. 10, 2014) ("[F]ederal courts are deemed capable of applying the substantive law of other states." (internal citations and quotations omitted)).

### 4. *Forum State's Interest*

Under the fourth factor, the interest of the forum state is "much stronger" when the plaintiff is a resident. *Sinatra*, 854 F.2d at 1200; *see also CE Distrib.*, 380 F.3d at 1112 ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."). Here, Plaintiffs are California citizens, who were injured in California[4] and allege violations of California laws. Therefore, "California possesses a clear interest in protecting [Plaintiffs] as [] California resident[s]." *Sinatra*, 854 F.2d at 1200. The fourth factor weighs in Plaintiffs' favor.

### 5. *Efficient Resolution*

The fifth factor – which state would provide the most convenient and efficient forum for resolution of the dispute – presents a close question. This fifth factor "focus[es] on the location of the evidence and witnesses." *Harris Rutsky & Co.*, 328 F.3d at 1133. Witnesses reside in California, Arizona, Oklahoma, Idaho, and Michigan, and records are most likely located in Michigan, where Stryker is headquartered. Given the location of the witnesses and documents,

---

[4] Again, the Court notes Stryker's concession that "Plaintiff Gin asserts causes of action under California law for failure to provide meal breaks, rest periods, accurate wage statements, business expense reimbursement, and timely wages upon discharge, *while in California*." Reply at 16 (emphasis added).

the Court concludes that this factor is neutral.  *See Ting v. Orbit Commc'n Co., Ltd.*, 105 F.3d 666, 1997 WL 8470, *5 (9th Cir. Jan. 7, 1997) (Unpub. Disp.) ("Fifth, a determination of which forum would promote the most efficient judicial resolution of this controversy is also a close one. Because the alleged wrongs against Ting took place while she was in Hong Kong or Rome, many of the likely witnesses would probably be outside the United States and hence judicial resolution may not be as effective in California.  On the other hand, Ting would likely be a witness, and she currently resides in California.  This factor favors neither party.").

### 6.  *Convenient Relief for Plaintiffs*

Under the sixth factor, courts acknowledge that "[l]itigating in one's home forum is obviously most convenient."  *CE Distrib.*, 380 F.3d at 1112.  The maintenance of a suit outside of California would be inconvenient and costly for Plaintiffs.  Because Plaintiffs reside in California, California provides the most convenient forum for their claims.  However, Plaintiffs have not shown that its claims could not be effectively remedied in Michigan.  Thus, this factor weighs in favor of Plaintiffs, but only on convenience grounds.

### 7.  *Existence of an Alternative Forum*

The plaintiff bears the burden of establishing that an alternative forum is not available, though this factor is significant only if other factors weigh against an exercise of jurisdiction. *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987); *Pac.-Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985).  Plaintiffs have not met their burden in showing that another forum is unavailable.  Rather, this factor favors Stryker as Michigan clearly provides a viable and available alternative to suit in this district.

In sum, the first, fourth, and sixth factors weigh in Plaintiffs' favor, whereas the second and seventh factors weigh in Stryker's favor.  The third and fifth factors are neutral.  While somewhat of a close call, the Court would conclude that Stryker has failed to make a compelling case that it would be unreasonable for the Court to exercise jurisdiction over Stryker.  Because the factors, on balance, favor litigation in this forum, the Court's exercise of personal jurisdiction over Stryker is reasonable.  The Court would therefore deny Stryker's motion to dismiss the FAC for lack of personal jurisdiction.

## B.  Whether This Court Lacks Jurisdiction Over the Claims of Out-of-State, Opt-In Plaintiffs

Stryker argues that the Court lacks personal jurisdiction over Stryker with respect to FLSA

claims by opt-in plaintiffs who are not citizens of California and who allege FLSA violations outside of California.  Mot. at 14-20.  Stryker contends that this Court does not have personal jurisdiction over the claims of non-California opt-in plaintiffs because of the Supreme Court's ruling in *Bristol-Myers*.  In *Bristol-Myers*, the Supreme Court held that a California state court, in a mass tort action, could not exercise personal jurisdiction over a defendant for claims of plaintiffs who were not injured in California or for claims with no connection to California.  *See Bristol-Myers*, 137 S. Ct. at 1781.

Since *Bristol-Myers*, courts have been split, including within the Ninth Circuit, on the question of whether *Bristol-Myers* applies to FLSA collective actions.  The Ninth Circuit Court of Appeals has not weighed in on this issue, and district courts in the Ninth Circuit have reached differing conclusions.  As recently summarized by a fellow Ninth Circuit district court, "at least three Ninth Circuit district courts have held that *Bristol-Myers* does apply to deprive courts of personal jurisdiction over claims by out-of-state plaintiffs in FLSA actions,[5] while at least seven have held the opposite.[6]"  *Wilkerson v. Walgreens Specialty Pharmacy LLC*, No. CV-21-01427-PHX-JAT, 2022 WL 15520004, at *4 (D. Ariz. Oct. 27, 2022).  Of the seven declining to apply *Bristol-Myers* to FLSA actions, four are California federal district court decisions.  *See Chavez*, 2020 WL 4505482, at *8; *Arends*, 2021 WL 4452275, at *1; *Pavloff*, 2020 WL 6828902, at *4 n.2; *Swamy*, 2017 WL 5196780, at *2.

In addition, *Wilkerson* nicely summarized the varying conclusions on this issue outside of this Circuit:

> Outside the Ninth Circuit at least 27 district courts have applied *Bristol-Myers* to such actions, while at least 17 have declined to do so.  Among circuit courts of appeal that have addressed the issue there is a split as well, with the Third, Sixth, and Eight Circuits in favor of applying *Bristol-Myers* and the First Circuit against.  *Fischer*, 42 F.4th 366, 371–88 (3d Cir. 2022); *Canaday v. Anthem*

---

[5] *Kurtz v. RegionalCare Hosp. Partners, Inc*, No. 4:19-CV-5049-RMP, 2021 WL 6246619, at *5-6 (E.D. Wash. Sept. 9, 2021); *Carlson v. United Nat. Foods, Inc.*, No. C20-5476, 2021 WL 3616786, at *4 (W.D. Wash. Aug. 14, 2021); *McNutt v. Swift Transp. Co. of Ariz.*, No. C18-5668, 2020 WL 3819239, at *7-9 (W.D. Wash. July 7, 2020).

[6] *Arends v. Select Med. Corp.*, No. CV 20-11381, 2021 WL 4452275, at *1 (C.D. Cal. July 7, 2021); *Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363, 2020 WL 6828902, at *4 n.2 (C.D. Cal. Oct. 2, 2020); *Cooley v. Air Methods Corp.*, No. CV-19-00850-PHX, 2020 WL 9311858, at *3 (D. Ariz. Sept. 25, 2020); *Chavez v. Stellar Mgmt. Grp.*, No. 19-cv-01353, 2020 WL 4505482, at *5-7 (N.D. Cal. Aug. 5, 2020); *Seiffert v. Qwest Corp.*, No. CV-18-70-GF, 2018 WL 6590836, at *1-5 (D. Mont. Dec. 14, 2018); *Swamy v. Title Source, Inc.*, No. C 17-01175, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017); *Thomas v. Kellogg Co.*, No. C13-5136, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017).

> *Cos.*, 9 F.4th 392, 395–404 (6th Cir. 2021), *cert. denied*, —— U.S. –
> ——, 142 S. Ct. 2777, —— L.Ed.2d —— (2022); *Vallone v. CJS Sols.
> Grp.*, 9 F.4th 861, 864–66 (8th Cir. 2021); *Waters v. Day &
> Zimmermann NPS, Inc.*, 23 F.4th 84, 91–99 (1st Cir. 2022), *cert
> denied*, —— U.S. ——, 142 S. Ct. 2777, —— L.Ed.2d —— (2022).

*Wilkerson*, 2022 WL 15520004, at *4.

Obviously, Stryker asks the Court to follow the line of cases applying *Bristol-Myers* to FLSA actions, while Plaintiffs ask the Court to do the opposite. *See generally* Mot.; *see also* Opp. Based on the current landscape, "the present majority view among both circuit and district courts is that *Bristol-Myers* applies in FLSA collective actions to deprive federal courts of personal jurisdiction over out-of-state opt-in plaintiffs." *Wilkerson*, 2022 WL 15520004, at *4. While none of these decisions are binding on this Court, *see Gunther v. Washington Cnty.*, 623 F.2d 1303, 1319 (9th Cir. 1979), the Court would agree with the reasoning in the majority of cases holding that *Bristol-Myers* does apply to FLSA claims.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 571 U.S. at 125. "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden*, 571 U.S. at 283 (quoting Fed. R. Civ. P. 4(k)(1)(A)). Thus, "[i]n a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted).

"There is no general federal long arm statute," *Ross*, 504 F.3d at 1138, and "Federal Rule of Civil Procedure 4(k) governs personal jurisdiction in federal court," *Will Co., Ltd. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). While Congress has expressly provided that a court can exercise nationwide personal jurisdiction over a defendant if a statute provides for nationwide, or worldwide, service, it has not authorized nationwide personal jurisdiction for *all* federal statutes. *See* Fed. R. Civ. P. 4(k)(1)(C). Specifically, Congress has authorized nationwide service, and thereby nationwide personal jurisdiction, in statutes such as the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1965(d)), the Sherman Act (15 U.S.C. § 5), and the Securities Exchange Act (15 U.S.C. § 78aa(a)), among others. *See Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 398-99 (6th Cir. 2021) (compiling statutes).

As the FLSA does not provide for nationwide service of process, service must be made under the forum's long-arm statute.  *See Wilkerson*, 2022 WL 15520004, at *5; *see also Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (noting that in *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 102-03 (1987), the Supreme Court implied that "a national service provision is a necessary prerequisite for a court to even consider a nationwide contacts approach.").  The forum's long-arm statute is constrained by the minimum contacts analysis.  *See McNutt*, 2020 WL 3819239, at *8.

After reviewing the parties' briefing and the decisions mentioned above, the Court would conclude that due process precludes it from exercising specific personal jurisdiction over claims brought by opt-in plaintiffs who worked as Sales Associates in states other than California.  There is no dispute that the opt-in plaintiffs and other potential out-of-state plaintiffs did not "suffer[ ] harm" in California, *Bristol-Myers*, 137 S. Ct. at 1782, and thus there is no "affiliation between the forum and the underlying controversy," such as "an activity or an occurrence that takes place in the forum State." *Id.* at 1781.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Plaintiffs do not dispute that application of *Bristol-Myers*, if applied here, would preclude the exercise of jurisdiction.  Instead, relying on cases that have found *Bristol-Myers* inapplicable in FLSA actions, Plaintiffs attempt to distinguish *Bristol-Myers*.  *See* Opp. at 16-18.

First, Plaintiffs argue that unlike the state law claims brought in state court in *Bristol-Myers*, the opt-in plaintiffs are asserting federal claims in federal court.  Opp. at 16.  As such, Plaintiffs argue that *Bristol-Myers* does not preclude the exercise of personal jurisdiction because the federalism concerns present in *Bristol-Myers* are absent here.  *Id.* at 16-17.  However, "[a] federal court applies the forum state's personal jurisdiction rules unless a federal statute 'specifically provides[s] for national service of process.'"  *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 327 (S.D.N.Y. 2017).  Here, because the FLSA does not provide for nationwide service of process, the Court's jurisdiction in this case is limited by the Fourteenth Amendment's Due Process Clause.  And, as discussed above, the lack of connection "between the forum and the underlying controversy" is sufficient to preclude the Court's exercise of personal jurisdiction here, regardless of the absence of federalism concerns discussed in *Bristol-Myers*.  *See Bristol-Myers*, 137 S. Ct. at 1781.

Next, Plaintiffs argue that Congress created the collective action mechanism to address

employment practices nationwide and that application of *Bristol-Myers* would be "impracticable" as "[n]o FLSA collective action case ever could reach the certification issue if the district court had to evaluate whether it possessed personal jurisdiction over each new opt-in plaintiff."  Opp. at 17-18 (quoting *Seiffert*, 2018 WL 6590836, at *4).   However, as the Supreme Court noted in *Bristol-Myers*, Plaintiffs are not precluded from bringing a nationwide collective action against Stryker.  *See Bristol-Myers*, 137 S. Ct. at 1783.  Indeed, Plaintiffs could file such an action in a Michigan district court in which Stryker is subject to general jurisdiction.  Moreover, Congress could enable such actions by amending the FLSA to provide for nationwide service of process. The Sixth Circuit summarized this issue:

> While the FLSA shows no reticence in setting nationwide labor standards, it does not establish nationwide service of process.  That silence rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions in laws enacted before and after the FLSA's passage in 1938.  What indeed would be the point of these provisions if Civil Rule 4(k) already allowed jurisdiction and service?  Because "Congress knows how to authorize nationwide service of process when it wants to provide for it," the absence of express language in the statute "argues forcefully that such authorization was not its intention."

*Canaday*, 9 F.4th at 399 (quoting *Omni Cap.*, 484 U.S. at 106).  Because Congress has yet to make such an amendment to the FLSA, and because Stryker is not subject to general jurisdiction in California, the Court cannot exercise personal jurisdiction over the out-of-state, opt-in plaintiffs. *See e.g.*, *Bone v. XTO Energy, Inc.*, 561 F. Supp. 3d 1132, 1138 (D.N.M. 2021) ("*Bristol-Myers'* harsh effects do not soften this Court's obligation to apply this U.S. Supreme Court case as binding precedent.  Congress may protect FLSA collective actions from *Bristol-Myers*' sting by amendment if it chooses . . . Otherwise, plaintiffs may pursue a nationwide FLSA collective action in the defendant's home state."); *Omni Cap.*, 484 U.S. at 106 ("It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it.  That Congress failed to do so here argues forcefully that such authorization was not its intention."); *Canaday*, 9 F. 4th at 400-01 (noting that the plaintiffs before it were not without recourse where "employees may file a nationwide collective action under the FLSA so long as they do so in a forum that may exercise general jurisdiction over the employer—namely its principal place of business or its place of incorporation").

   In addition, Plaintiffs argue that this Court should follow the reasoning of other California

district courts that followed the reasoning of *Swamy* in declining to apply *Bristol-Myers* in this context. Opp. at 19.[7] However, the Court finds *Wilkerson*'s discussion of *Swamy* to be persuasive:

> The *Swamy* court noted that *Bristol-Myers* "did not address class or collective actions" and did not concern "a federal claim created by Congress specifically to address employment practices nationwide." *Swamy*, 2017 WL 5196780, at *2. Reasoning that extending *Bristol-Myers* to FLSA collective actions would "splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights," the court declined to do so. *Id.* While the factual distinctions the *Swamy* court identified are accurate and the policy concerns it expressed are compelling, nonetheless what *Swamy* and the courts that follow it do not explain is how and why these distinctions and concerns impact the legal outcome. It may be true that the federalism concerns that motivated the Supreme Court in *Bristol-Myers* are largely missing here. But because Rule 4(k)(1)(A) compels federal courts, absent an applicable federal statute or other exception, to analyze personal jurisdiction as a state court would in similar circumstances, and therefore to apply *Bristol-Myers* to the extent it is applicable, the result of that analysis will be the same whether or not every concern that drove the decision in *Bristol-Myers* is equally relevant to state and federal courts. The Court therefore will not follow the *Swamy* line of cases, and for similar reasons is not persuaded by Plaintiff's argument that failing to follow *Swamy* would put it out of step with other district courts in the Ninth Circuit.

*Wilkerson*, 2022 WL 15520004, at *6.

Further, *Swamy* was decided prior to *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018), where the Ninth Circuit provided an extensive discussion of collective actions and clearly stated that the "FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" *Id.* at 1104 (quoting *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016)). The Court finds that this framing requires the conclusion that "opt-in plaintiffs in FLSA cases must be treated the same as original plaintiffs, including for purposes of personal jurisdiction." *Wilkerson*, 2022 WL 15520004, at *5. Accordingly, "[b]ecause opt-in plaintiffs are treated the same as original plaintiffs, and because a court must have personal jurisdiction over each claim by each plaintiff in a suit, a lack of personal jurisdiction over claims by opt-in plaintiffs

---

[7] Plaintiffs cite to three California federal district court cases. *See Chavez*, 2020 WL 4505482, at *8; *Arends*, 2021 WL 4452275, at *1; *Pavloff*, 2020 WL 6828902, at *4 n.2. However, only *Chavez* provided extensive discussion on this issue.

cannot be ignored." *Id.* And while Plaintiffs argue that this Court should not "dissent from the unanimous voice of California district courts that *Bristol-Myers* does not apply to FLSA collective actions brought in federal court," *see* Opp. at 20, as noted above, these decisions are not binding on this Court. *See Gunther*, 623 F.2d at 1319 ("Although we look to the reasoning of other circuits and district courts for guidance, we are bound only by decisions rendered in this circuit.").

Plaintiffs also rely on *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022), where the First Circuit Court of Appeals held that *Bristol-Myers* does not apply in the FLSA context. There, the First Circuit held that while "Rule 4(k)(1)(A) does make the due process standard of the Fourteenth Amendment applicable to federal-question claims in federal court when a plaintiff relies on a state long-arm statute for service of the summons[,]" "this is not the same thing as saying that Rule 4 or the Fourteenth Amendment governs district court jurisdiction in federal question cases after a summons has been properly served[.]" *Id.* at 94. However, as Judge David J. Barron noted in his dissent in *Waters*, "[t]he majority's reading of Rule 4(k)(1)(A) ... directly conflicts, as the majority itself acknowledges, with that of other circuits" and with "the common (if, perhaps unreflective) practice of federal courts[.]" *Id.* at 102-03 (Barron, J., dissenting). Rather, Judge Barron noted that "the common . . . practice of federal courts under this rule appears . . . to have been to apply Fourteenth Amendment-based (rather than Fifth Amendment-based) due process limits on personal jurisdiction throughout a suit's duration, and so even as to later-added claims and plaintiffs." *Id.* at 103.

"But even if the *Waters* court is correct that Rule 4(k) does not apply to FLSA opt-in plaintiffs after a defendant has been properly served consistent with Fourteenth Amendment personal jurisdiction requirements, that is not enough to grant a court personal jurisdiction over their claims: as discussed above and as the Ninth Circuit has repeatedly stated, district courts must have not only proper service of process but also a basis in rule or statute to assert personal jurisdiction." *Wilkerson*, 2022 WL 15520004, at *7. Indeed, "contrary to the First Circuit's reasoning, initially satisfying Rule 4(k)'s requirements with respect to one plaintiff and one defendant would not suffice to support jurisdiction over other claims by additional plaintiffs if no provision of Rule 4(k) indicates a basis for those additional claims—unless an alternative statutory basis affirmatively authorizing the exercise of jurisdiction is identified." *Id.*

While the First Circuit suggests that Rule 20 could serve as a basis for asserting jurisdiction over additional claims by additional plaintiffs, "this would again be inconsistent with the Ninth

Circuit's statement that Rule 4(k) governs personal jurisdiction in federal courts . . . [a]nd it would require the Court to accept that a provision which says nothing about personal jurisdiction somehow governs it while a provision explicitly discussing it has nothing to do with it after service is complete." *Wilkerson*, 2022 WL 15520004, at *7.  For these reasons and the lack of caselaw supporting the First Circuit's reading of Rule 4(k)(1)(A), the Court would decline to adopt the holding in *Waters* here.

Finally, although not invoked by Plaintiffs, the Court will briefly discuss the doctrine of pendent jurisdiction, a judge-made doctrine under which a court may hear a claim "for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts" as a claim in the same suit for which there is personal jurisdiction.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2005); *see also* 4A Wright & Miller, Fed. Prac. & Proc. § 1069.7 (4th ed. 2020).  District courts have discretion to decide whether or not to exercise pendent jurisdiction. *Id.* at 1181.  Pendent personal jurisdiction is "typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Action Embroidery*, 368 F.3d at 1180-81.  However, this doctrine does not help Plaintiffs.  A court cannot exercise personal jurisdiction at all without a statute or rule conferring it. *See id.* at 1177.  And unlike the statute at issue in *Action Embroidery*, *see id.* at 1180, the FLSA does not authorize nationwide service of process, as discussed above.  Although some courts have exercised pendent personal jurisdiction absent an anchoring claim under a federal statute authorizing nationwide service, *see, e.g.*, *Chavez*, 2020 WL 4505482, at *9-10, the Ninth Circuit has never endorsed such an approach.  Accordingly, the Court would decline to exercise pendent personal jurisdiction here.

In sum, the Court would find that it lacks personal jurisdiction over the claims of out-of-state, opt-in plaintiffs because opt-in plaintiffs who worked for Stryker outside of California do not have claims "related to" Stryker's contacts with this state.  The Court therefore would conclude that it cannot exercise specific personal jurisdiction over the claims of out-of-state, opt-in plaintiffs.

In addition, the Court would dismiss the claims of the three out-of-state plaintiffs who have already opted in to the litigation.  Accordingly, the FSLA claims of opt-in plaintiffs Brian Jamison, Tevin Hood, and Yelena Hays will be dismissed without prejudice.

21

**C.  Whether This Court Lacks Jurisdiction Over Plaintiff Gin's Claim Arising Under New Jersey Law**

Next, Stryker argues that Plaintiff Gin's claim arising under New Jersey law should be dismissed for lack of personal jurisdiction.  Mot. at 20-22.  Plaintiff Gin seeks to represent a proposed Rule 23 class of Sales Associates who have been employed by Stryker in New Jersey, including employees who attended training in New Jersey, for alleged failure to pay overtime wages in violation of New Jersey wage and hour law.  FAC ¶¶ 7-8.  However, Stryker asserts that the Court lacks personal jurisdiction over Plaintiff Gin's New Jersey law claim because it does not "arise out of or result from" Stryker's activities in California.  Mot. at 22.

In response, Plaintiffs argue that Plaintiff Gin's claim under New Jersey law arises out of and relates to Stryker's employment of her in California because her hiring, mandatory training, and year-long employment were all undertaken by Stryker for the purpose of obtaining benefits from California.  Opp. at 22.  Plaintiffs assert that "Stryker must have known that the harm of unpaid overtime would be felt in California even if her training occurred in New Jersey" because Plaintiff Gin used "a California tax ID number and applied California state income taxes to each paycheck."  *Id.*  Plaintiffs further argue that "[t]he entire course of Stryker and Gin's dealing is a nearly year-long employment relationship whose center of gravity was in California based on its benefits to Stryker, its long-term area of operation, and the location of harm that she ultimately suffered."  *Id.*

Contrary to Plaintiffs' assertion, to exercise personal jurisdiction over a defendant, a court must have "[personal] jurisdiction over the defendant with respect to each claim."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977).  Based on the Court's review of the allegations in the FAC, Plaintiff Gin's claim is based on alleged violations of her rights under New Jersey law that occurred entirely and exclusively in the state of New Jersey, where she was allegedly required to attend training.  *See* FAC ¶19 ("Gin worked as a Sales Associate trainee in Defendant's mandatory training program, including, during all times relevant within New Jersey"); *see also id.* ¶ 145 (alleging that Stryker failed to pay Plaintiff Gin and putative class members "overtime wages for hours worked within the State of New Jersey").

Plaintiffs have not sufficiently demonstrated how this claim arose out of Stryker's connections with California.  Plaintiffs argue that Stryker should have known that the harm of unpaid overtime would be felt in California because Plaintiff Gin had a California tax ID and

documents regarding her employment were sent to California.  Opp. at 22.  However, the Supreme Court in *Walden* made clear that the Court must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.  134 S. Ct. at 1124-25.  Further, the challenged conduct occurred entirely and exclusively in New Jersey, where the alleged training took place, and purportedly violated New Jersey law.  As the FAC states, Stryker allegedly failed to pay Plaintiff Gin "overtime wages for hours worked *within* the State of New Jersey" in accordance with New Jersey law.  FAC ¶ 145.  However, in *Walden*, the Supreme Court concluded that the "[p]etitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."  571 U.S. at 288.  The Supreme Court noted that "none of petitioner's challenged conduct had anything to do with Nevada itself."  *Id.*  Likewise, the challenged conduct here – Stryker's alleged failure to pay overtime under New Jersey law for work performed in New Jersey – has nothing to do with California, even though it may have been foreseeable that Plaintiff Gin would ultimately suffer harm in California.

In addition, Plaintiffs argue that jurisdiction is proper here because the "center of gravity" of her employment relationship with Stryker was in California and "but for" her employment in California the cause of action would not have arisen.  Opp. at 21-22.  In support, Plaintiffs rely on *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020), and *Quimby-Johnson*, 2019 WL 4391131.  *Id.*  Stryker distinguishes these cases on the basis that they both "grapple[d] with the question of whether the nonresident defendant could be haled into a California court to defend against claims that it violated *California* law," but neither "case involved the instant fact pattern: whether a court in California may exercise personal jurisdiction over a nonresident defendant where the plaintiff asserts claims under another state's law for events that occurred in that other state (here, New Jersey)."  The Court would agree with Stryker.

Here, the Court's exercise of specific personal jurisdiction over Stryker is based on Stryker's implementation of uniform corporate employment policies that specifically applied to work performed by California employees within California, as assessed in Section III(A)(b) above.  As such, the Court has jurisdiction over California-specific wage claims asserted by Plaintiffs because they are challenging the application of Stryker's wage-and-hour policies to their work performed in California.  However, Plaintiffs have not sufficiently connected Stryker's

employment policies applicable to employees in California to a claim based on conduct that entirely occurred in New Jersey, thereby violating New Jersey law.  Accordingly, the Court would find Stryker's contacts with the forum state are too attenuated from Plaintiff Gin's New Jersey law claim at issue.

For these reasons, the Court would conclude that it lacks personal jurisdiction over Plaintiff Gin's claim under New Jersey law.

**IV.**   **<u>Conclusion</u>**

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** the Motion as indicated above.