Lin Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman (*admitted pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Paolo Meireles (*admitted pro hac vice*)
pmeireles@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

*Counsel for Plaintiffs and the Proposed FLSA Collective and Class*

*(Additional counsel on signature page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN JEROZAL and NIKKI GIN, individually and on behalf of all other members of the general public similarly situated,<br><br>　　Plaintiffs,<br><br>v.<br><br>STRYKER CORPORATION, a Michigan corporation,<br><br>　　Defendant. | Case No.: 2:22-CV-4094-GW-AFMx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER** |

# TABLE OF CONTENTS

Page

I. Introduction ................................................................................................... 1
II. Background .................................................................................................... 1
III. Argument: The Subpoenas are Objectionable and Should be Quashed. ...... 3
    A. Plaintiffs Have Standing to Move to Quash the Subpoenas. ................ 3
    B. The Subpoenas Request Irrelevant Information. .................................. 3
    C. The Subpoenas Are Harassing and Constitute Retaliation. .................. 5
    D. The Subpoenas Request Information Already Requested From Plaintiffs. ................................................................................................ 9
IV. Conclusion ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ale v. TVA*,
  269 F.3d 680 (6th Cir. 2001) .................................................................................4

*Barrington v. MortgageIT, Inc.*,
  No. 07 Civ. 61304, No. 07 Civ. 61304 (S.D. Fla. Dec. 10, 2007) ........................4

*Belling v. DDP Holdings, Inc.*,
  No. 12 Civ. 1855, 2012 U.S. Dist. 198078 (C.D. Cal. May 30, 2013) .................3

*Burdine v. Covidien, Inc.*,
  No. 10 Civ. 194, 2011 U.S. Dist. LEXIS 14648 (E.D. Tenn. Feb. 11, 2011) ........7

*Chavez v. Hat World, Inc.*,
  No. 12 Civ. 5563, 2013 U.S. Dist. LEXIS 60863 (N.D. Ill. Apr. 29, 2013) 4, 5, 10

*Compaq Computer Corp. v. Packard Bell Elecs.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ..........................................................................4

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*,
  No. EDCV15979JGBSPX, 2016 WL 7486606 (C.D. Cal. Oct. 27, 2016)............4

*EEOC v. Princeton Healthcare Sys.*,
  No. 10 Civ. 4126, 2012 U.S. Dist. LEXIS 65115 (D.N.J. May 9, 2012)...............7

*Hightower v. S. Cal., Permanente Grp.*,
  No. EDCV 22-181-JWH (KKx), 2022 U.S. Dist. LEXIS 151559
  (C.D. Cal. July 18, 2022).........................................................................3, 4, 6, 7

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*
  *Dated July 23, 2020*,
  337 F.R.D. 639 (N.D. Cal. 2020) ..........................................................................3

*In re Subpoenas to Produce Documents, Info., or Objects to Muddy Waters*,
  No. 18 Civ. 00147, 2019 WL 994020 (C.D. Cal. Jan. 8, 2019) ............................3

*Richardson v. BBB Group, Inc.*,
  No. 14 Civ. 1014, 2014 U.S. Dist. LEXIS 60298 (N.D. Tex. Apr. 30, 2014) .......8

*Rutherford v. Am. Bank of Commerce*,
  565 F.2d 1162 (10th Cir. 1997) .............................................................................7

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011) ..................................................................................7

*Vysata v. Menowitz*,
  No. 18 Civ. 06157, 2019 U.S. Dist. LEXIS 125356 (C.D. Cal. May 30, 2019) ....3

*Warnke v. CVS Corp.*,
  265 F.R.D. 64 (E.D.N.Y. 2010).............................................................................8

*Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*,
  No. 17 Civ. 5956, 2018 U.S. Dist. LEXIS 224482 (C.D. Cal. Sept. 4, 2018) .......3

**Statutes**

Fair Labor Standards Act,
  29 U.S.C. §§ 201, *et seq*. ......................................................................................1

## I. Introduction

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d), Plaintiffs Jonathan Jerozal and Nikki Gin move to quash Defendant's subpoenas to Plaintiffs' current and post-Stryker employers and for a protective order preventing Defendant from issuing similar subpoenas as to other employers of Plaintiffs, opt-in plaintiffs and/or proposed class members. Defendant's subpoenas are objectionable because they are overly broad, seek information and documents that lack relevance, are not proportional to the needs of the case, are harassing, and are unduly prejudicial. Based on the broad nature of the subpoenas and Defendant's contact with Plaintiffs' current and post-Stryker employers, Defendant's subpoenas are harassing and threaten to damage their relationships with their post-Stryker and current employers in retaliation for Plaintiffs' bringing claims for unpaid wages. Based upon these objections, Plaintiffs respectfully request that the Court quash the subpoenas, issue a protective order preventing Defendant from issuing similar subpoenas as to other employers of Plaintiffs, opt-in plaintiffs and/or proposed class members without leave of Court, and grant any other relief that the Court deems just and proper.

## II. Background

Plaintiffs filed this action alleging that Defendant Stryker Corporation violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and analogous California wage laws by misclassifying them and other similarly situated Sales Associates as exempt from overtime while they worked as trainees in Stryker's mandatory training program, among other things. (ECF No. 52, First Amended Complaint). Plaintiffs assert that trainees do not qualify for the outside sales exemption (or any other arguable exemption) because they are not customarily and regularly engaged in outside sales work while in training and are not permitted to represent Stryker or promote Stryker's products to medical professionals until they have successfully completed training (ECF No. 52 ¶¶ 52-54). Defendant denies liability and contends that Plaintiffs were properly classified as exempt.

1  (ECF No. 70, Answer, Third Affirmative Defense).

2       On February 6, 2023, Defendant served subpoenas to Plaintiffs' post-Stryker employers, including Plaintiffs' current employers,[1] seeking:

1. All DOCUMENTS constituting or reflecting [Plaintiff's] application for work for employment with YOU, including but not limited to, all resumes, cover letters, and background information submitted or provided by [Plaintiff] concerning her prior employers or work.

2. All DOCUMENTS constituting or reflecting interview notes or YOUR impressions of [Plaintiff's] experience for prior employers.

3. All DOCUMENTS constituting or reflecting COMMUNICATIONS that YOU had with [Plaintiff's] prior employers and/or references revealed as part of her application for employment with YOU.

4. All DOCUMENTS that describe [Plaintiff's] job duties and responsibilities for prior employers.

5. Any and all other DOCUMENTS or COMMUNICATIONS that RELATE or PERTAIN TO the job duties and responsibilities that [Plaintiff] performed for employers that she worked for prior to applying for employment with YOU.

     Defendant's subpoenas are overbroad. None of the information requested has any bearing on whether Plaintiffs were misclassified *by Stryker* during their training period -- that is to say they do not seek documents regarding the job duties performed by Plaintiffs while they were in training with Stryker. Defendant's subpoenas exceed the relevant issues in the case and threaten to harass and damage Plaintiffs' relationships with their employers for whom they worked after working for Defendant, including their current employers. The subpoenas should be quashed and the Court should issue a protective order to protect against Defendant issuing

---

[1] Defendant's subpoenas to each of Plaintiffs' subsequent employers seek the same information. The subpoenas are attached hereto as Exhibit "B."

1  similar subpoenas as to other employers of Plaintiffs, future opt-in plaintiffs and
2  proposed class members without leave of Court.

3  **III.     Argument:  The Subpoenas are Objectionable and Should be Quashed.**

4      **A.     Plaintiffs Have Standing to Move to Quash the Subpoenas.**

5      As this Court recognized during the February 16, 2023 telephonic
6  conference, Plaintiffs have standing to object to the subpoenas on current and
7  former employers.  A party has standing to challenge a third-party subpoena where
8  the party challenges that the information sought is privileged or protected to itself.
9  *Belling v. DDP Holdings, Inc.*, No. 12 Civ. 1855, 2012 U.S. Dist. 198078, at *7
10 (C.D. Cal. May 30, 2013) (quashing subpoenas seeking plaintiff's employment
11 records). Both federal and California law recognize employees' rights to privacy of
12 their employment records. *Id.* Accordingly, an employee has standing to challenge
13 third-party subpoenas requesting personnel records from other employers.  *Id.*

14     **B.     The Subpoenas Request Irrelevant Information.**

15     Defendant, as the party issuing the subpoena, bears the burden of proof to
16 demonstrate that the discovery is relevant. *In re Rule 45 Subpoenas Issued to*
17 *Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D.
18 Cal. 2020); *Vysata v. Menowitz*, No. 18 Civ. 06157, 2019 U.S. Dist. LEXIS
19 125356, at *3-4 (C.D. Cal. May 30, 2019); *In re Subpoenas to Produce Documents,*
20 *Info., or Objects to Muddy Waters*, No. 18 Civ. 00147, 2019 WL 994020, at *2
21 (C.D. Cal. Jan. 8, 2019).  "The scope of discovery allowed under a Rule 45
22 subpoena is the same as the scope of discovery allowed under Rule 26." *Hightower*
23 *v. S. Cal., Permanente Grp.*, No. EDCV 22-181-JWH (KKx), 2022 U.S. Dist.
24 LEXIS 151559, at *9 (C.D. Cal. July 18, 2022).  "The requirement of Rule 26(b)(1)
25 that the material sought in discovery be relevant should be firmly applied[.]" *Id.*
26 "Discovery requests seeking irrelevant information are inherently undue and
27 burdensome." *Id.*  (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts*, *Inc.*, No. 17
28 Civ. 5956, 2018 U.S. Dist. LEXIS 224482, at *4 (C.D. Cal. Sept. 4, 2018); *see also*

*Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, No. EDCV15979JGBSPX, 2016 WL 7486606, at *4 (C.D. Cal. Oct. 27, 2016) (quoting *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)).

Absent a specific showing as to their relevance and proportionality, employment records should not be discoverable due to their highly private nature. *See Hightower*, 2022 U.S. Dist. LEXIS 151559, at *12-13; *Barrington v. MortgageIT, Inc.*, No. 07 Civ. 61304, No. 07 Civ. 61304, at *14-15 (S.D. Fla. Dec. 10, 2007) (in FLSA misclassification case, quashing subpoena and granting protective order finding that "[e]ven were the court able to find that that Plaintiffs' prior employment history is marginally relevant to their exempt status," the subpoenas were overbroad); *Chavez v. Hat World, Inc.*, No. 12 Civ. 5563, 2013 U.S. Dist. LEXIS 60863, at *6 (N.D. Ill. Apr. 29, 2013) (quashing subpoenas to other employers in misclassification case, finding that the information was "*marginally* relevant" and would not ultimately determine the outcome of the exemption question).

Here, Stryker's subpoenas to Plaintiffs' post-Stryker and current employers seek information irrelevant to Plaintiffs' claims that they were misclassified during their training period with Stryker. The subpoenas broadly seek *all* documents and communications about Plaintiffs' experience with *all* prior employers (whether pre- or post-Stryker). The subpoenas are not limited to information pertaining to Stryker, nor are they limited to information regarding training at Stryker.[2] The

---

[2] Even if these requests were limited to seeking information from post-Stryker employers that specifically referenced Plaintiffs' employment with Stryker, this information still would not be relevant. In an overtime wage misclassification case such as this, an employee's actual job duties performed for their employer are at issue, not how an employee may have embellished those experiences to subsequent employers in job applications and resumes for the purpose of seeking a job. *See Ale v. TVA*, 269 F.3d 680, 688 (6th Cir. 2001) (The key to a determination of whether an employee is covered by an exemption to the FLSA overtime requirements does not depend on an employee's general characterization of his or her job in a resume

relevance of the materials requested is particularly suspect as to Stryker's request for "interview notes and impressions of Plaintiffs. Any marginal relevance of such documents is far outweighed by the intrusiveness and harassing nature of the request.

During conferral on this matter Stryker argued that the fact that its subpoenas could capture irrelevant information was purely "academic" because it is possible that the employers subpoenaed would not have any responsive, irrelevant documents to produce and so there would be no harm. *See* Declaration of Lin Chan ("Chan Decl.") ¶ 2, Ex. 1 (email from Kirk Hornbeck to Ilene Bernal arguing that Plaintiffs' objection is meritless because Defendant is unaware of irrelevant documents that could be captured by its subpoenas and any associated burden on the subpoena targets is unlikely to be undue). Defendant's position ignores the standard: it is Stryker's burden to demonstrate that the requests as written are targeted to seek relevant information and the requests are proportional to the needs of the case *before* production, not after. Defendant's desire to alert Plaintiffs' employers about these claims and then take a "wait and see what is ultimately produced" approach to demonstrating relevance is not supported by any decisions Plaintiffs were able to uncover, and amounts to nothing more than a fishing expedition highly likely to unearth personal employment information having no plausible connection to the claims or defenses at issue in this case.

### C. The Subpoenas Are Harassing and Constitute Retaliation.

Even if the request sought relevant information—they do not—the subpoenas

---

designed to enhance the employee's duties and responsibilities in an effort to obtain a job, or an employer's general characterization of a particular job. What is important is what an employee actually does on a day-to-day basis."); *Chavez*, 2013 U.S. Dist. LEXIS 60863, at *7 ("Ultimately, however, this case will not turn on plaintiffs' subjective view of their job responsibilities but, instead, on whether Hat World can show that plaintiffs managed employees within the requisite 80/80 rule regardless of plaintiffs' subjective impressions of their job responsibilities."). Regardless, Defendant's requests are in no way targeted to information regarding Plaintiffs' employment with Stryker, much less their training with Stryker, the crux of this case.

should still be quashed. The irrelevant and overbroad documents sought in the subpoenas threaten to harass Plaintiffs and subject them to retaliation for bringing these claims by informing Plaintiffs' employers that they have sued another employer so that they will be blackballed in the industry.

In this regard, *Hightower* is instructive. In *Hightower*, plaintiff brought an employment discrimination case against a former employer. *Hightower*, 2022 U.S. Dist. LEXIS 151559, at *2. Before "the Court ha[d] even issued a scheduling order," defendant served subpoenas on employers plaintiff worked for both before and after working for defendant. *Id.* at *4-5, 13. Among the requests, and mirroring those sought by Stryker here, defendant sought:

1. Documents and/or materials relating to the job application process of PLAINTIFF, including resumes, curricula vitae, applications, and/or notes of the interviews.
2. Documents and/or materials relating to the hiring processing of PLAINTIFF, including letters of offer/acceptance, new hire and employee forms, wage/salary forms, benefit forms notification forms, and/or insurance forms.

*Id.* at *10-11. Defendant argued that the requests were relevant in that they sought, among other things, "discovery into whether Plaintiff misrepresented his credentials and/or work experience[.]" *Id.* at *12.

While the court raised a question regarding defendant's inability to articulate the relevance of the requests,[3] the court was significantly concerned with the proportionality of the requests aimed at third-party employers in relation to an employment action. The court "recognized that notifying a current employer of the filing of a claim can be considered retaliatory because it would chill employees'

---

[3] The *Hightower* court permitted one request to subsequent employers to stand – request no. 6 seeking pay records as the record arguably permitted defendant to demonstrate whether plaintiff mitigated damages. *Id.* at *14. Mitigation is not relevant in this unpaid wage case.

1  willingness to pursue statutory claims and remedies for fear of adversely impacting
2  future employment opportunities." *Id.* at *13 (quoting *Rutherford v. Am. Bank of
3  Commerce*, 565 F.2d 1162, 1164 (10th Cir. 1997) (affirming finding that defendant-
4  employer retaliated when it notified plaintiff's current employer regarding
5  discrimination charge)); *see also Burdine v. Covidien, Inc.*, No. 10 Civ. 194, 2011
6  U.S. Dist. LEXIS 14648, at *12-13 (E.D. Tenn. Feb. 11, 2011) (prohibiting
7  defendant from contacting plaintiff's potential employers based upon plaintiffs'
8  concerns that their intent was to "poison the well"); *see also Shahriar v. Smith &
9  Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee
10 fearful of retaliation or of being 'blackballed' in his or her industry may choose not
11 to assert his or her FLSA rights."); *EEOC v. Princeton Healthcare Sys.,* No. 10 Civ.
12 4126, 2012 U.S. Dist. LEXIS 65115, at *63 (D.N.J. May 9, 2012) ("If filing what
13 appears to be a fairly routine case . . . opens up the prospect of discovery directed at
14 all previous, current, and prospective employers, there is a serious risk that such
15 discovery can become an instrument of delay or oppression."). In that regard, the
16 court found "the [s]ubpoenas directed to Plaintiff's current employers are
17 particularly troubling." *Hightower,* 2022 U.S. Dist. LEXIS 151559, at *13.
18      Here, Stryker has presented this Court with subpoena requests containing,
19 among others, requests nearly identical to those in *Hightower*, also targeted to
20 Plaintiffs' post-Stryker employers, including their *current* employers, and likewise
21 served with haste even before the Court has entered a scheduling order and before
22 the parties had any opportunity to meaningfully confer on the subpoenas.[4] As in

---

[4] The timing of Stryker's subpoenas coupled with its failure to provide an opportunity to confer prior to their issuance evinces Stryker's true intent to use the subpoenas to notify Plaintiffs' subsequent and current employers of the claims to prejudice Plaintiffs and cause reputational harm. Defendant served Plaintiffs' counsel with the intended subpoenas on the afternoon of Friday, February 3, 2023. Plaintiffs contacted Defendant to confer on these subpoenas on Tuesday, February 7, 2023, at 1:38 pm PT. Defendant informed Plaintiffs that the subpoenas had already been served on the third-party employers on Monday, February 6, 2023 (i.e., one business day after they were served on Plaintiffs' counsel Friday

*Hightower*, Plaintiffs have "a legitimate concern that the disclosure of [their] dispute with [their] past employer may have a direct negative effect on [their] current employment, and [the defendant] is not entitled to subpoena Plaintiffs'[] employment records from [their] employer[s] where a less intrusive method of discovery is available." *Richardson v. BBB Group, Inc.*, No. 14 Civ. 1014, 2014 U.S. Dist. LEXIS 60298, at *3 (N.D. Tex. Apr. 30, 2014) (quashing subpoena to a plaintiff's current employer); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69-70 (E.D.N.Y. 2010) (quashing defendant's subpoenas served on plaintiffs' other employers and holding that subpoenas to current employer should be used only as a "last resort" and citing cases). This risk is even more pronounced here, where the industry at issue is relatively small and some of the subpoenas directed to Plaintiffs' subsequent employers, such as those sent to Boston Scientific Corporation and Abbott Laboratories (Plaintiff Gin's post-Stryker and current employers, respectively), are among a small group of Stryker's direct competitors. Further compounding the concern, Defendant advised this Court during the February 16, 2023 telephonic conference that Defendant's counsel has spoken with in-house counsel for LAFC Management LLC (Plaintiff Jerozal's current employer) regarding the subpoena and explained the circumstances of the present claim. At this present time, Plaintiffs have no way of knowing what was discussed, how the present lawsuit and claims were described, and/or how Plaintiff Jerozal was

---

afternoon). The parties conferred on February 9, 2023, during which Plaintiffs advised Defendant that they object to the subpoenas on numerous grounds, including relevance and scope, and that they seek to unnecessarily harass Plaintiffs, and requested that Defendant withdraw the subpoenas to permit the parties to confer further. Defendant disagreed with Plaintiffs' stated objections, and has refused to withdraw the subpoenas, ending any further discussion and hamstringing Plaintiffs' ability to receive protection from the subpoenas prior to their return date. Accordingly, while Defendant may have complied with the letter of Fed. R. Civ. P. 45 in serving Plaintiff "before" serving the third-parties with a subpoena, it certainly made efforts to avoid the spirit of the rule to ensure its subpoenas were served on Plaintiffs' employers as soon as possible. *See* Fed. R. Civ. P. 45 Committee Notes on Rules – 2013 Amendments (regarding notice to the opposing party, "[t[he amendments are intended to achieve the original purpose of enabling the other parties to object[.]").

otherwise characterized to his current employer by Defendant–precisely the type of harm *Hightower* and other, similar courts cited *supra* seek to prevent by prohibiting these types of subpoenas from being issued.

### D. The Subpoenas Request Information Already Requested From Plaintiffs.

Further demonstrating that the subpoenas cause harassment and are not justified by the legitimate need for relevant discovery, much of the information sought by Stryker's subpoenas directly overlaps with document requests Stryker already served on Plaintiffs themselves just days prior to issuing the subpoenas.[5] While Plaintiffs do not concede the relevance of the discovery sought by, or the appropriateness of, these requests, it is clear that Defendant could have *started* by attempting to seek this information from Plaintiffs directly as opposed to notifying every single post-Stryker employer it could find. Defendant's urgency to serve subpoenas on post-Stryker and current employers mirroring discovery requests

---

[5] On February 1, 2023, Stryker served document requests on Plaintiffs which sought, among other things:

> RFP No. 16: All DOCUMENTS RELATING TO YOUR employment by any employer or self-employment from the date of the termination of YOUR employment with DEFENDANT to the present, including. DOCUMENTS responsive to this request shall include, but are not limited to, position descriptions, earnings, benefits and conditions of employment, performance or disciplinary records.

> RFP No. 17: All DOCUMENTS RELATING TO YOUR efforts to obtain employment since the date of the termination of YOUR employment with DEFENDANT. Documents responsive to this request shall include, but are not limited to, employment applications completed, resumes, cover letters, notes, logs, COMMUNICATIONS with or responses from prospective employers, COMMUNICATIONS with placement agencies, and all other DOCUMENTS evidencing YOUR attempts to obtain employment since such time.

> RFP No. 18: All DOCUMENTS that YOU have submitted to prospective employers and placement agencies since the date of the termination of YOUR employment with DEFENDANT to the present, including, but not limited to, résumés, job applications, reference lists, letters of recommendation, and cover letters.

served on Plaintiffs underscores that the chief effect of these subpoenas is to harass, embarrass, and retaliate against Plaintiffs for the claims they asserted in this case. *See Chavez*, 2013 U.S. Dist. LEXIS 60863, at *6 (court "troubled" by timing of defendants' subpoenas to other employers because, instead of addressing the question of relevance and obtaining a ruling from the court, they instead chose to serve the subpoenas).

Irrespective of the relevance of the information sought (for which Defendant cannot articulate a basis), these subpoenas should be quashed and a protective order should be entered.

## IV. Conclusion

Stryker's subpoenas to Plaintiffs' post-Stryker and current employers lack relevance, violate Plaintiffs' privacy rights, are harassing and constitute an attempt to retaliate against Plaintiffs for asserting their federal and state protected right to wages. For these reasons, Plaintiffs respectfully request that the Court quash the subpoenas, issue a protective order preventing Defendant from issuing similar subpoenas as to other employers of Plaintiffs, opt-in plaintiffs and/or proposed class members without leave of court, and grant ant other relief that the Court deems just and proper.

Dated: February 24, 2023    Respectfully submitted,

/s/ Lin Chan
Lin Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman (*admitted pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

|   |   |
|---|---|
| 1 | 250 Hudson Street, 8th Floor |
| 2 | New York, NY 10013<br>Telephone: (212) 355-9500<br>Facsimile: (212) 355-9592 |
| 3 |  |
| 4 | Christopher E. Coleman (*admitted pro hac vice*)<br>ccoleman@lchb.com |
| 5 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 6 | 222 2nd Avenue South, Suite 1640<br>Nashville, TN 37201 |
| 7 | Telephone: (615) 313-9000<br>Facsimile: (615) 313-9965 |
| 8 |  |
| 9 | Paolo Meireles (*admitted pro hac vice*)<br>pmeireles@shavitzlaw.com |
| 10 | Tamra Givens (*admitted pro hac vice*)<br>tgivens@shavitzlaw.com |
| 11 | SHAVITZ LAW GROUP, P.A.<br>951 Yamato Road, Suite 285 |
| 12 | Boca Raton, FL 33431<br>Telephone: (561) 447-8888<br>Facsimile: (561) 447-8831 |
| 13 |  |
| 14 | *Counsel for Plaintiffs and the Proposed FLSA Collective and Rule 23 Classes* |
| 15 |  |
| 16 |  |
| 17 |  |
| 18 |  |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |
| 26 |  |
| 27 |  |
| 28 |  |

**Local Rule 11-6.1 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 3,930 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 24, 2023          Respectfully submitted,

/s/ Lin Chan
Lin Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008